ESTATE of Charles J. WYLY, Sr., Flora E. Wyly, Independent Executrix (Charles J. Wyly, Jr. and Samuel Evans Wyly substituted in the place and stead of Flora E. Wyly, Independent Executrix, Deceased), Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

ESTATE of Winston C. CASTLEBERRY, Deceased, Republic National Bank of Dallas, Independent Executor, Petitioner-Appellant Cross-Appellee,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee Cross-Appellant.

Russell M. FRANKEL, Donald E. Woodard and Southern National Bank of Houston, as Independent Co-Executors of the Estate of Jules R. Frankel, Deceased, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

Nos. 78–1306, 78–1612 and 78–2585.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Tax Div., U. S. Dept. of Justice, Gilbert E. Andrews, Act. Chief, App. Section, Lester Stein, Acting Chief Counsel, IRS, Jonathan S. Cohen, Daniel F. Ross, Attys., Tax Div., Dept. of Justice, Washington, D. C., for C. I. R. and for U. S.

Robert F. Ritchie, Dennis L. Lutes, Dallas, Tex., for petitioner-appellant cross-appellee in No. 78–1612.

Jean Kilpatrick, Atty., Tax Div., Dept. of Justice, for U. S.

Andrews, Kurth, Campbell & Jones, James E. Myers, Houston, Tex., for plaintiffs-appellees.

Before MORGAN, RONEY and GARZA, Circuit Judges.

GARZA, Judge:

We are squarely confronted in these three federal estate tax cases with a single question of law, a question answered by way of what is alleged to be dicta thirty years ago in *Commissioner v. Estate of Hinds*, 180 F.2d 930 (5 Cir. 1950). Is 26 U.S.C. § 2036(a)(1), [hereinafter referred to as "the Act"], applicable automatically to any gift of property from a decedent to his or her spouse in Texas, solely because the decedent by unavoidable operation of Texas law is left with a residue of interest in any income generated by such gifted property?

If the answer is affirmative, then it is clear that a portion of the property will by the Act be includable in the gross estate of the decedent. The Government and other parties hereto, and even separate decisions of the Tax Court differ on what fraction of the value of gifted property should be included.[1]

Gene E. Ford, Dallas, Tex., for petitioner-appellant in No. 78–1306.

1. In *Hinds, supra*, the Tax Court held that one-fourth of the total value of property transferred was includable, that fraction representing one-half of the one-half community property interest conveyed. The Commissioner maintained there, and in the three cases before us, that the full one-half community property interest should be included. The estates of Wyly, Castleberry, and Frankel argue that the one-fourth fraction would be correct if any portion is in-

We will not answer the collateral question, for we hold today that the Act does not automatically render some portion of the value of property gifted by one Texas spouse to another includable in the giving spouse's gross estate, solely on the basis of Texas community property law. In so holding, we mean to breathe new life into the "dicta" of *Hinds*, to follow the intention of Congress in enacting this provision, and to accord with the great weight of authority handed down by the courts of Texas.

## DISPOSITION BELOW

The cases arrive from different courts and bring different holdings. The facts and disposition of each must be summarized in some detail.

*Estate of Wyly v. Commissioner* comes to us from the tax court, its decision reported at 69 T.C. 227 (1977). The case involves an irrevocable trust created by Charles J. Wyly and his wife, in March of 1971, funded with shares of stock which were community property of the Wylys.[2] The trustees were to distribute the income to Mrs. Wyly, and upon her death the corpus was to be divided and held in trust for grandchildren. The trustees were given the power to invade the corpus for the benefit of Mrs. Wyly, and she could withdraw up to $5,000 of it annually.

Mr. Wyly died in 1972, and a deficiency was assessed against his estate following an audit of the estate tax return. The Commissioner determined that the Act applied to the trust on a theory that the decedent retained an interest in community property transferred to the trust. The Tax Court sustained this position by its decision under review.

In *Estate of Castleberry v. Commissioner*, the Tax Court confronted the applicability of the Act to gifts of community property between Texas spouses on facts free of the complicating trust provisions present in *Wyly*. Prior to Mr. Castleberry's death in 1971, he made gifts to his wife of his one-half community interest in several municipal bonds.[3] On its federal estate tax return, petitioner did not include any portion of the value of these bonds in decedent's gross estate. The Commissioner determined that a portion of their total fair market value was includable, under the Act. The Tax Court ruled in the Commissioner's favor, 68 T.C. 682 (1977).

*Frankel v. United States* comes not from the Tax Court but from a District Court, and brings a ruling directly contrary to those of the tax court. The decedent, Jules R. Frankel, died in July of 1973. Between 1960 and 1972 he made seven transfers, giving his community property interest in certain assets to his wife.[4] The taxpayer brought this estate tax refund case to avoid inclusion. The District Court granted partial summary judgment for the taxpayer on that issue, without discussion of its reasoning.

## THE COMPETING CONTENTIONS

The Government's rationale for the applicability of the Act to these transfers is based upon provisions of Texas community property law which will be examined in detail below. The crucial portions of that body of Texas law are those which cause the income from the separate property of a spouse to be the community property of both spouses. The Government contends that the Act applies because it requires inclusion in a decedent's gross estate of the

cludable. In *Castleberry*, the Tax Court followed the one-fourth measure, but in *Wyly*, it held the full one-half includable, basing its decision upon the "reciprocal trust doctrine" and trust features of that case. In *Frankel*, the Government sought to obtain a full one-half, but the district court held no portion of the transfers' value includable.

2. The fair market value at death of Mr. Wyly's one-half community interest in these shares, held includable, was $46,388.46.

3. The total fair market value of these bonds at death was $954,310.24. As noted in footnote 1, one-fourth was held includable by the Tax Court.

4. The assets included $59,000 in cash, and bonds with a fair market value of $252,951.00 at Mr. Frankel's death.

value of any property transferred to another if there was retained a "right to the income" from such property. On the facts before us, the Government maintains that a gift from one spouse to another becomes the separate property of the donee, but that any income from the gift automatically becomes the community property of both, the resultant interest in the donor triggering the Act. The Tax Court so held, and further found, as prerequisites to its applicability ruling, that such an interest was "retained" within the meaning of the Act, and that it was retained "under" these transfers.

The taxpayers do not dispute that the donors became automatically possessed of a community property interest in the income from their gifts, but contend that the resultant interests were so "limited, contingent, and expectant" that they did not approach the level required to come within the Act. They argue further that these interests were neither "retained" within the Act, or "under" the gift transfers.

The checkered history of the Government's position is instructive. § 2036(a)(1) of the Internal Revenue Code of 1954 carried over a portion of the predecessor 26 U.S.C. § 811(c). The precise question presented by these three cases was dealt with under § 811(c) by this Court in *Commissioner v. Estate of Hinds, supra.* That case arrived by the Commissioner's petition to review a Tax Court decision. Chief Judge Hutcheson stated the issue thus:

[W]hether the Tax Court erred in failing to hold that taxpayer's entire interest in certain community property, irrevocably transferred in trust for the use and benefit of his wife and their children, was, under § 811(c) of the Internal Revenue Code, 26 U.S.C. § 811(c), includable within taxpayer's gross estate because taxpayer retained the possession and enjoyment of, or right to the income from the property during his life.

The Tax Court had approved the Commissioner's determination that though the transfer made the property the separate property of the wife, the income from it became community property, and thus the decedent had within § 811(c) retained the use, possession, and enjoyment of, or the right to, the income. However, the Tax Court included only one-half of the community one-half transferred by the decedent, or one-fourth of the total property transferred. The Commissioner sought a ruling in this Court that a full one-half of the value of the property was includable.

The taxpayer did not appeal, feeling, at the time prerequisite steps were required, that the amount involved was too small to justify further litigation. On argument of the Commissioner's petition for review, the taxpayer stated that the Tax Court should be affirmed, not because it was right, but because the Commissioner had already received more than he was entitled to, *no portion* being properly includable under § 811(c).

Recognizing, as did the taxpayer, that failure to cross-petition for review had barred the Court from ordering total non-inclusion, it agreed with taxpayer that the Commissioner's petition for review should be denied. The Court's precise language follows:

We agree with the taxpayer. Without, therefore, at all approving the decision of the Tax Court, or deciding the point so much labored here by the commissioner and taxpayer, but unnecessary to the decision of this case, whether the income from the property was, within the decision of *Commissioner of Internal Revenue v. Porter*, 5 Cir., 148 F.2d 566, community property, we deny the petition for review. We do this upon the authority of the settled law of Texas, that whether the income be regarded as separate property of the wife or as community income from the wife's separate property, the taxpayer retained neither "the possession or enjoyment of, or the right to the income from," the property so as to make applicable Sec. 811(c)(1)(B), invoked by the commissioner and in part applied by the Tax Court. 180 F.2d 930 at 932.

Several of the parties to these cases have argued that the *Hinds* ruling on our ques-

tion was not dicta, in that it was necessary to the Court's judgment that the petition be denied. We need not express an opinion, for we intend to independently reaffirm the *Hinds* position. It suffices to say that the weight of authority presented by *Hinds* was not so reduced by the manner of its decision as to cause prudent attorneys planning estates in Texas to disregard it entirely. It existed, and no doubt was followed in good faith.

For at least 25 years following *Hinds*, the conduct of the Commissioner in maintaining its argument was hardly sufficient to give notice that it retained a contrary viewpoint. In 1951, the Tax Court itself followed the principle of *Hinds*, in *Estate of Wier*, 17 T.C. 409 (1951), *acq.* 1952–1 C.B. 4, *withdrawn and nonacq.* 1966–1 C.B. 4. The issue presented was whether one-half the value of a homestead transferred by decedent to his wife should be included in his estate because the homestead interest imposed on the decedent by operation of law constituted a retained interest under the Act. [§ 811(c)]. The Commissioner conceded that "none of the cash and securities transferred by the decedent to his wife are includible in the decedent's gross estate by reason of a retention of an interest in the income from such property." Id. at 421. The Tax Court agreed, and cited *Hinds*.

Following the translation of portions of § 811(c) into § 2036(a)(1), the Government conceded its original point in a District Court case, *Pearson v. Campbell*, 62–2 U.S. T.C. 86,576 (N.D.Tex. November 7, 1962). That Court held that the decedent's community property interest in the income from transferred property was not enough to bring the transfer within the Act.

In 1975 the Internal Revenue Service suddenly announced that it would not be bound by the language in *Hinds*, labelling it dicta, in Rev.Rul. 75–504, 1975–2 C.B. 363. The ruling embodies the Government's arguments in *Hinds* and these cases. The Government stated on oral argument before us that its position has always been consist-ent, before and after the issuance of this Revenue Ruling. It conceded, however, that it had not "gone out and sought cases to test." [5] A good example of its lack of diligence, even after the Revenue Ruling, is presented by *Estate of Deobald v. United States*, 444 F.Supp. 374 (E.D.La.1977), involving the question of whether a community property interest arising by operation of Louisiana law is "retained" within the Act. The District Court held that it was not. The case was not appealed, what we are told was inadvertent error.

Finally, we arrive at the latest chapter in this unfortunate series of events, the three cases before us. The opinion of the Tax Court in *Castleberry* was filed in August of 1977. The majority opinion held for the Commissioner on the question of applicability of the Act. Two judges separately concurred, and four judges filed a dissenting opinion which, on the basis of this Court's decision in *Hinds*, concluded that the statute was not applicable to the transfers. *Wyly* followed in November of 1977.[6]

Against this background, and recognizing that state law determines the nature of a property interest while federal law determines whether it is subject to taxation, *Morgan v. Commissioner*, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940), we proceed to an analysis of the community property law of Texas, and its impact on the application of the Act.

## TEXAS COMMUNITY PROPERTY LAW

The basic concept underlying the Texas community system of marital property is derived from the Spanish Civil Law, a heritage of Spanish-Mexican sovereignty. Its fundamental precept is that marriage is a partnership in its tangible incidents as well as in the ideal personal relationship. Under the system, the rights and duties of a spouse with regard to specific property may vary as to ownership, the right to control, and corresponding liability.

---

5. Oral argument, New Orleans, October 24, 1979.

6. *Wyly* cited and relied on the determination of the applicability of § 2036(a)(1) in *Castleberry*.

■ It should first be noted that the system is provided for in its essential elements by the fundamental law of Texas, its Constitution, at Article 16 § 15. (Vernon 1975). That provision is supplemented and enhanced by the Texas Family Code, Chapter 5 (Vernon 1975). Article 16 § 15 states that it is "self-operative," and authorizes statutes pursuant thereto which are not inconsistent. Accordingly, the basic elements of Texas marital property law occupy a position above that of state statutes, and neither the legislature or affected parties may validly take steps which are inconsistent with them. *See generally Williams v. Williams*, 569 S.W.2d 867 (Tex.1978); *Gorman v. Gause*, 56 S.W.2d 855 (Tex.App.1933).

Analysis of Texas law relevant to the issue before us must focus on two aspects of community property law: ownership and management rights. As we shall see, the fact that ownership is vested in a spouse does not mean that he or she will have any management powers over the property.

■ Article 16 § 15 of the Texas Constitution sets out two basic classifications of marital property. "Separate property" of a spouse is specifically defined as that acquired by its owner before marriage, or "that acquired afterward by *gift*, devise, or descent." [emphasis added]. Community property is all other property acquired by a spouse during marriage. *See also* Tex.Fam. Code Art. 5.01 (Vernon 1975); *Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799 (1925). Thus, a gift of property from one spouse to another or a gift of a spouse's one-half community interest to the other spouse results in separate ownership in the donee, by the mandatory constitutional definition. *Story v. Marshall*, 24 Tex. 305 (1859).

However, by the equally mandatory operation of the same provision, the *income* from separate property becomes the community property of both spouses. *Arnold v.*

*Leonard, supra.* Neither spouse may change the character of such income from community property to separate property before the income comes into existence. *Burton v. Bell*, 380 S.W.2d 561 (Tex.1964); *Gorman v. Gause, supra.* Thus, the only way spouses could cause such income to become separate property is to partition it after it comes into existence, and the community property interest has automatically vested in both. In our cases, it is undisputed that the donor spouse had imposed upon him a community property interest in the income from the transferred property.

But what, precisely, did that give him? To answer that question, we must look to the management powers of the spouses over these classes of marital property. Each spouse owns an undivided one-half interest in the community, such property being subject to *joint* management, control, and disposition over it. Tex.Fam.Code Art. 5.22(c) (Vernon 1975). The separate property of a spouse is wholly owned by that spouse, and is subject to his or her *sole* management, control, and disposition. Tex.Fam.Code Art. 5.21 (Vernon 1975).[7]

■ The crucial point to consider in terms of our inquiry is that a spouse's community property interest in revenue from the other's separate property differs from the general community property interest described above. Subcategories of the community classification have developed to denote the spouse's relative management powers. A spouse receiving income from his or her separate property holds what is known as a "special community" or a "sole management community" interest. This subcategory is provided for in Tex.Fam. Code Art. 5.22(a)(2) (Vernon 1975), codifying prior case law:

> . . . each spouse has the sole management, control, and disposition of the community property that he or she would

7. § 5.21 of the Texas Family Code (Vernon 1975) reads:

> Each spouse has the sole management, control and disposition of his or her separate property.

§ 5.22 reads:

> Except as provided in subsection (a) of this section, the community property is subject to the joint management, control, and disposition of the husband and wife, unless the spouses provide otherwise by the power of attorney in writing or other agreement.

have owned if single, including but not limited to:

 . . . (2) revenue from separate property.

The other spouse, who receives a community property interest by operation of law, has only "ownership" in an almost abstract sense, with no concomitant direct management rights.

It should first be noted that § 5.22 describes the spouse's management powers over his or her sole management community in exactly the same terms which § 5.21 uses for separate property: the key words in each instance being "*sole* management, control, and disposition." [emphasis added]. Texas courts have held that, in the absence of actual or constructive fraud on the interest of the other spouse, it is an absolute right, *Moody v. Smoot*, 78 Tex. 119, 14 S.W. 285 (1890), and that a spouse is able, in the absence of fraud, to deal with sole management community as he or she might with his or her own separate property, free from any participation, consent, or interference by the other spouse. *See Hawkins v. Britton State Bank*, 122 Tex. 69, 52 S.W.2d 243 (1932).

 The functional interest of the non-managing spouse in this sort of property comes down, by the general consensus of all parties, to two situations: (1) a spouse's ability to complain of fraud on his or her interest, and (2) his or her ability to complain that the other spouse used such income to improve a separate estate, and to petition a court for an accounting thereof.[8]

 With regard to the first situation, a non-managing spouse has been found to have a cause of action for fraud only where the managing spouse made gifts or transfers of community property which were held to be "excessive or capricious." *See Carnes v. Meador*, 533 S.W.2d 365 (Tex.Civ. App.—Dallas 1975, writ ref'd n. r. e.); *Givens v. Girard Life Insurance Company of America*, 480 S.W.2d 421 (Tex.Civ.App.— Dallas 1972, writ ref'd n. r. e.).[9] This court

---

8. There are some references in the briefs to two other factors which, it might be argued, go toward showing a "right to the income" on the part of the donor spouse. By operation of law, a spouse in Texas has a contingent interest upon divorce in accumulated income, and in a share of accumulated income upon the death of the other spouse. Neither is sufficient to bring these transfers within § 2036. On divorce, a court may award the donor spouse some part of any accumulated income. But the court is not compelled to do so. Tex.Fam.Code Art. 3.63 (Vernon 1975). This contingency, along with possible receipt of some portion at death, is remote, and subject both to nonfraudulent disposition of the income by the donee, and his absolute right to dispose of the principal, as will be discussed fully, infra.

9. *Carnes* was a suit for declaratory judgment brought by the widow of Ray Meador against his daughter by a previous marriage. Meador had opened a checking account in the name of "Ray D. Meador or Patsy Jean Meador," (the defendant) before his marriage, and subsequently made withdrawals and deposits, leaving a balance at his death of $9,000. Two months before his death, Meador made a gift of a check for $10,000 to the defendant's husband out of this account. The widow claimed all three items, as community property. The district court rendered judgment for her, and the Court of Appeals reversed on other grounds, answering affirmatively the question, "[W]ould

disposition of the funds in the accounts to the defendant and the $10,000 gift to the son-in-law constitute constructive fraud as to the widow's community interest in those funds?" 533 S.W.2d at 368.

*Givens* was an interpleader action brought by Girard Life Insurance Company to determine ownership of insurance proceeds on the life of Walter Morris, deceased, naming as defendants, the beneficiary, and Edna Morris, the insured's widow. It was noted that Givens was not related to Morris, and was described in the beneficiary designation as "a friend." The only other items in the estate were personal articles and an acre of land. The Trial Court awarded one-half of the proceeds to Mrs. Morris, and one-half to Givens. The Court of Civil Appeals affirmed, and, while declining to set out "[W]hat special circumstances would justify designation of an unrelated beneficiary," held that a long-time friendship "does not support a substantial benefit to the unrelated friend from funds owned in common by the husband and wife." 480 S.W.2d at 427.

This line of cases makes it clear that a spouse aggrieved by a disposition of his or her community interest by the other spouse may proceed on a theory of actual or constructive fraud. A presumption of constructive fraud will arise where a spouse unfairly disposes of the other spouses one-half community interest. *Reaney v. Reaney*, 505 S.W.2d 338, 340 (Tex.Civ.App. —Dallas 1974, no writ). The burden of proof

in *Davis v. Prudential Insurance Company of America,* 331 F.2d 346 (5 Cir. 1964) recognized that Texas courts have generally limited such relief to "unjustified, excessive, and capricious gifts to strangers to the community . . . ." 331 F.2d at 352.

The Government has cited *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935) and *Harris v. Royal,* 446 S.W.2d 351 (Tex.Civ. App.—Waco 1969, writ ref'd n.r.e.), as holding that a managing spouse is liable for an accounting of community property used to improve his or her separate estate. This is, however, only an equitable right available on partition or dissolution of the community. *See* 3 L. Simpkins, Texas Family Law § 22.38 at 501 (Speer's 5th ed. 1976). The spouse seeking reimbursement must show the amount of community funds utilized, and enhancement of the value of the other spouse's separate property. *In re Marriage of Greer,* 483 S.W.2d 490 (Tex.Civ.App.— Amarillo 1972, writ dism'd). Recovery is limited to reimbursement for the amount by which the value of the separate property has been enhanced as of the time of the action. *Burton v. Bell, supra.*

■ Thus, existing Texas law in the area teaches that the only relevant consequence of a spouse's ownership of a community property interest in income from the other spouse's separate property is an inchoate standing to complain that the other spouse made an excessive or capricious gift to a third party, or to demand an accounting on dissolution of the marriage or partition, alleging the income was used to improve the other spouse's separate property. Does this constitute a "right to the income?" We

think not, and proceed to an examination of the Act to explain why.

## § 2036(a)(1) IN PERSPECTIVE

Prior to amendment by the Tax Reform Act of 1976, the relevant section read in its entirety:

### TRANSFERS WITH RETAINED LIFE ESTATE

(a) General rule.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or . . .

■ The purpose of this provision is to prevent circumvention of federal estate tax by use of inter vivos schemes which do not significantly alter lifetime beneficial enjoyment of property supposedly transferred by a decedent. *See* 74 Cong.Rec. 7078–79, 7198–99 (1931); H.R.Rep. No. 708, 72nd Cong., 1939–1 C.B. (Part 2) 457, 490–91; S.Rep. No. 665, 72nd Cong., 1939–1 C.B. (Part 2) 496, 532. The Supreme Court has recognized this purpose on several occasions. In *United States v. O'Malley,* 383 U.S. 627, 631, 86 S.Ct. 1123, 1126, 16 L.Ed.2d

---

then settles on the donor spouse or on the donee to prove the fairness of the disposition. *Murphy v. Metropolitan Life Insurance Co.,* 498 S.W.2d 278, 282 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n. r. e.); *Davis v. Prudential Insurance Company of America,* 331 F.2d 346 (5 Cir. 1964). In determining whether the presumption exists, a Texas court will consider whether the community funds were in reasonable relation to the remaining community assets. However, if the surviving spouse is adequately provided for, then a gift to a relative will not be considered fraudulent. *Givens,* 480 S.W.2d at 425–426.

In *Carnes,* the Court of Civil Appeals detailed the remedies available to the complaining spouse:

. . . [T]he aggrieved spouse has a right of recourse first against the property or estate of the disposing spouse; and, if that proves to be of no avail, then the aggrieved spouse may pursue the proceeds to the extent of the community interest into the hands of the party to whom the funds have been conveyed. 533 S.W.2d at 371.

145 (1966), it was stated that the section shows the intent of Congress to subject "to tax all property which has been the subject of an incomplete *inter vivos* transfer." In *United States v. Estate of Grace*, 395 U.S. 316, 320, 89 S.Ct. 1730, 1733, 23 L.Ed.2d 332 (1969) the Court noted:

> The general purpose of the statute was to include in a decedent's gross estate transfers that are essentially testamentary—i. e., transfers which leave the transferor a significant interest in or a control over the property transferred during his lifetime.

In accord with that authority, this Court has stated:

> [§ 2036 is] part of a Congressional scheme to tax the value of property transferred at death, whether the decedent accomplishes the transfer by will, by intestacy, or by allowing his substantial control over the property to remain unexercised until death so that the shifting of its economic benefits to the beneficiary only then becomes complete. *In Re Estate of Lumpkin*, 474 F.2d 1092, 1097 (5th Cir. 1973).

The classic case of the intended application of the Act would be a purported gift with a retained life estate in the donor.

 The wording of the Act makes it clear that in order to come within its range, a spouse's community property interest in any income generated by the separate property of the other must constitute a "right" to the income. In *United States v. Byrum*, 408 U.S. 125, 92 S.Ct. 2382, 33 L.Ed.2d 283 (1972), the Supreme Court stated that "[T]he term 'right,' certainly when used in a tax statute, must be given its normal and customary meaning. It connotes an ascertainable and legally enforceable power . . . ." It is against this definition that a donor-spouse's community interest in the income from property given to the other spouse must be weighed.[10]

We find that such interest does not come near the level of a "right" under *Byrum* and § 2036(a)(1).[11] The donor-spouse has none of the traditional indicia of ownership. He has no control whatsoever over the principal from which the income is produced. He is not entitled to possess, control, use, or enjoy the income in which he has been given a technical interest.

While he has an inchoate standing to challenge third party transfers in those exceedingly limited circumstances in which Texas courts have found to constitute a "fraud" on the other spouse, and to demand an accounting on dissolution of the marriage for use in improvements of the other spouse's separate property, these remedies do not in themselves constitute or create a "right" to the income, nor allow the donor-spouse to enforce any such "right." They are at most a means of preventing misuse of sole management community property by the managing spouse.

Even these miniscule remedies against another's forbidden uses are reduced to mere expectancies, as is the entire interest, by the managing spouse's absolute powers

---

10. The Government on oral argument stated that the Supreme Court, in *Hopkins v. Bacon*, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249 (1930), and *United States v. Rompel*, 326 U.S. 367, 66 S.Ct. 191, 90 L.Ed. 137 (1945), "recognized" that a non-managing spouse has a "right to" the community property in which he or she is interested. Those cases do not stand for that proposition.

The Supreme Court has noted that a non-managing spouse has an *interest* in such property, but on no occasion has it passed on whether this interest constitutes a "right to" the property within § 2036(a)(1). We have traced the contours of the interest, and find that the question must be answered negatively.

11. This conclusion is strengthened by developments since *Hinds* was decided. In 1967 the Matrimonial Property Act, codified as Tex.Fam. Code Art. 5.01 et seq. (Vernon 1975), eliminated management right distinctions between husband and wife. Today, unless they agree otherwise, the spouses have the same rights vis-a-vis each other. *See* Comment, *An Overview of the Equal Rights Amendment in Texas*, 11 Houston L.Rev. 136 (1973); Comment, *The Family Code—Has it Substantially Changed Marital Property Rights Under Family Code*, 9 Houston L.Rev. 120 (1971); McKnight, *Recodification And Reform Of The Law Of Husband And Wife*, 33 Texas Bar J. 34 (1969); McSwain, *Proposed Revision Of Marital Property Rights Statutes*, 31 Texas Bar J. 1013 (1968).

of disposition over the principal. The managing spouse may dispose of the principal in any way he or she sees fit, or convert it to uses which do not produce income. In either case, the donor-spouse's interest in any income is irretrievably gone.

Decisions analogous to ours have been made in other circuits. In *Estate of Uhl v. Commissioner*, 241 F.2d 867 (7 Cir. 1957), the issue of what constitutes a "right to the income" within § 811(c), was addressed. There, decedent conveyed property to a trust, retaining a right to $100 per month in trust income. The trustee, could, in his discretion, distribute any additional income to the decedent. No one disputed that the retained $100 was properly included in the decedent's gross estate. However, the Seventh Circuit reversed the Tax Court's determination of includibility as to the discretionary disbursements. The right to receive such income was held an expectancy, and not a "right," because the decedent could not compel these transfers.

In *Commissioner v. Douglass' Estate*, 143 F.2d 961 (3 Cir. 1944), the Court refused to accept the Commissioner's argument that a predecessor of § 2036 applied where trustees of an inter vivos trust could have used trust income to meet the decedent-settlor's obligation to support his minor children. The Court flatly held that it would not create a fiction by ruling that decedent had not given up all direction or control: "If this addition to tax law is to be made, the Congress, not the courts should make it." 143 F.2d at 963.

By *Clark v. United States*, 62–2 U.S.T.C. 86,557 (U.S.D.C. Colo. October 18, 1962), the Commissioner argued § 2036 applied to an interspousal transfer in a non-community property state. Decedent made a gift of securities to her husband before death, and it was argued that this should be included in her gross estate. The Court found to the contrary, stating:

Undoubtedly, Mrs. Clark had an *equity* in the transferred property which would have, under certain circumstances received court protection. If, for example, Mr. Clark had exercised unrestrained do-

minion over the property and had wasted it, it is possible that a court of equity would have discovered a remedy for her. This, however, does not prove that there was a retained life estate within the contemplation of § 2036 . . . 62–2 U.S. T.C. at 86,563.

The Government cites *Estate of Spiegel v. Commissioner*, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330 (1949), a case involving a reversionary interest arising by operation of law. The decedent had made a transfer in trust of certain stocks to himself and another. On his death the corpus was to be distributed in the same way that the income had been during his life, by division among his three children, and if they did not survive him, to any of their surviving children. No provision was made for distribution of the corpus and accumulated income if the decedent should survive all of his children and grandchildren. Under Illinois law, this gave the settlor a possibility of reverter. The Supreme Court held that the existence of this possibility of reverter made the corpus of the trust includable in his gross estate under § 811(c). [The relevant portion of § 811(c) is now found in § 2037 of the 1954 code]. In so ruling, it was stated that:

. . . it is immaterial whether such a present or future interest, absolute or contingent, remains in the grantor because he deliberately reserves it or because, without considering the consequences, he conveys away less than all of his property ownership and attributes, present or prospective. In either event the settlor has not parted with all of his presently existing or future contingent interests in the property transferred. He has therefore not made that "complete" kind of trust transfer that § 811(c) commands as a prerequisite to a showing that he has certainly and irrevocably parted with his "possession of enjoyment." 335 U.S. at 705, 69 S.Ct. at 303.

This point leads to our next inquiry: as these interests were created by operation of law, were they "retained" within the Act "under" the transfers? We hold they were

not. It is conceded that if they were not, the Act does not apply.

The Government recites that under *Spiegel,* the donor's motive for a transfer is unimportant, the only relevant factor in determining applicability of those sections. being the effectiveness of the transfer in wholly passing title to the property. Thus, even if less than the whole is unintentionally or unavoidably conveyed, the transfer is said to come within the ambit of the tax statutes. The government's error is in applying this construction to § 2036(a)(1). We believe its reliance on *Spiegel* and its progeny is misplaced, for the reason given in *Estate of Deobald v. United States, supra.* It was noted by the District Court there that those cases involved subdivisions of § 811(c) which are predecessors to § 2037, not § 2036. "Because the word 'retained' was not contained in § 811(c), the *Spiegel* court had no need to construe the term." *Deobald,* 444 F.Supp. at 381. Courts have long recognized a distinction between § 2036 and other sections on this issue.

In *Spiegel,* the decedent had a reversionary interest because *he* failed to make the most complete transfer possible, a route which was open to him. In Texas, on the facts of our cases, the donors did all they could do to transfer the totality of their interest and control. Nevertheless, the constitutional definition of community property imposed such an interest on them.

In *Rose v. United States,* 511 F.2d 259 (5 Cir. 1975) this Court considered whether a decedent "possessed" any incidence of ownership in insurance policies he had purchased within § 2042(2). Decedent was trustee of several trusts created for his children by his brother, and bought the policies as trustee, making himself also the owner and beneficiary of each. The estate's argument that § 2042(2) applied only to incidents of ownership *reserved* by the transferor was rejected, the Court holding the mere existence of a power sufficient. In so holding, it contrasted § 2042(2) with § 2036:

> Under § 2036 Congress specifically levied the estate tax upon interests *retained* by a decedent in connection with an incomplete transfer . . . Under § 2042, however, Congress applied the tax to insurance over which a decedent *possessed* any incidents of ownership. The difference in statutory language is significant. 511 F.2d at 264.

Thus, this Court has recognized that for an interest to be "retained" under § 2036, there is required some action on the part of the donor resulting in an incomplete transfer. Under certain sections not containing that language, inclusion may follow the mere "possession" of an interest without any such action causing an incomplete transfer.

This has been recognized by the Tax Court itself. In *Estate of Gilman,* 65 T.C. 296, 305, 306–7 (1975), that court stated:

> § 2036(a) reflects a "legislative policy of subjecting to tax all property which has been the subject of incomplete inter vivos transfer." . . . The policy is to include in a decedent's gross estate transfers which are in substance testamentary, i. e., "transfers which leave the transferor a significant interest in or control over the property transferred during his lifetime" . . . § 2036 (a)(1) applies only where the decedent has "retained" enjoyment "under" the "transfer." This means that the enjoyment of the transferred property must be reserved in "connection with or as an incident to the transfer" . . . The section applies only where a prearrangement, embodied in an express or implied agreement, permits the transferor to enjoy the benefits of the property or its income . . . Thus, for example, this section does not apply where a husband transfers his interest in a residence to his wife and they continue to occupy it as the family home, unless, by agreement, he reserves the right to occupancy as an incident to the transfer. (Cases omitted.)

In *Castleberry,* however, the Tax Court concluded that the Act applies where the donor holds an income interest in transferred property solely by operation of state law.

■ We do not believe that an interest, created solely by operation of law as the unavoidable result of what was in form and within the intendment of the parties the most complete conveyance possible, is a retention within the Act. There must be some act or omission on the part of the donor, such as an express or an implied agreement between donor and donee at the time of the transfer, which provides for retention. *See, e. g., Guynn v. United States,* 437 F.2d 1148 (4 Cir. 1971); *First National Bank of Shreveport v. United States,* 342 F.2d 415 (5 Cir. 1965); *Skinner's Estate v. United States,* 316 F.2d 517 (3 Cir. 1963); *Estate of McNichol v. Commissioner,* 265 F.2d 667 (3 Cir. 1959).

■ That the community interest involved here did not arise "under" these transfers is clearly supported by the decision of the Tax Court in *Estate of Gutchess,* 46 T.C. 554 (1966), *acq.* 1967–1 C.B. 2, where it specifically held that a donor spouse's right, arising only by operation of state marital property laws, did not constitute an interest retained "under" a transfer within § 2036. In *Gutchess,* the Commissioner attempted to use an Ohio statute which gives a non-owning spouse the right to occupy the family homestead until the owning spouse obtains a court decree ordering ouster. Where the decedent had given homestead property to his wife, the Commissioner asserted that this provision caused a retention of a life estate. The Tax Court did not agree:

> Respondent also makes some argument that under Ohio law (Ohio Rev.Code sec. 3103.04) one spouse cannot be excluded from residence in the other's dwelling except by decree of court, and no such decree was obtained here. It is difficult to see how that would have any bearing here. If decedent had some residence rights granted by Ohio law that would not mean retention of use and enjoyment 'under' a transfer or required by the statute that is here involved. 46 T.C. at 557.

The Tax Court attempted to distinguish its own decision in *Gutchess* on the basis that mere requirement that an action be brought and a court decree obtained by the Ohio wife was not a substantive diminution of the wife's right to terminate her husband's residence rights. Conversely, it felt that under Texas law the decedent's right to the community income was not defeasible and was not dependent upon the actions or inactions of his spouse. First, the Tax Court has incorrectly stated that Texas law. It failed to note that a Texas spouse may terminate the other spouse's community income interest as we have noted. These decedents' community interest in income is no less defeasible than the husband's residence right in *Gutchess,* and in fact could have been defeated without the court action required under Ohio law.

We are persuaded that this interest arose simply by operation of law, and not "under" the transfers of property we have before us, within the Act.

## CONCLUSION

For the reasons stated in detail above, it is our conclusion that § 2036(a)(1) does not sweep the value of these transfers into the donor's gross estate. To summarize our review of federal and state law, we have held that the donor's community property interest in the income produced by these transferred properties is so limited, contingent, and expectant that it does not amount to a "right to the income," within the Act as defined by *United States v. Byrum, supra.* The interest is neither "significant," or "substantial" as the Supreme Court and this Court have called for in *United States v. Estate of Grace* and *In Re Estate of Lumpkin, supra,* and is therefore not subject to estate tax under this section. We have further held that the interest arises *only* by operation of a mandatory definition contained in the Texas constitution which spouses may not circumvent, and that thus it is neither "retained" within the meaning of the Act, nor arisen "under" the transfers concerned.

We have traced the history of the Government's assertion of these arguments, noting its failure to adequately seek clarification of *Hinds* for 25 years, and the sudden

resurrection presented by a 1975 revenue ruling. A statement by the Supreme Court in *Byrum,* made when it was faced with a similar situation, is noteworthy:

> The modification of this principle now sought by the Government could have a seriously adverse impact . . . Courts properly have been reluctant to depart from an interpretation of tax law which has been generally accepted when the departure could have potentially far-reaching consequences. When a principle of taxation requires reexamination, Congress is better equipped than a court to define precisely the type of conduct which results in tax consequences. When courts readily undertake such tasks, taxpayers may not rely with assurance on what appear to be established rules lest they be subsequently overturned. Legislative enactments, on the other hand, although not always free from ambiguity, at least afford the taxpayers advance warning. 408 U.S. at 134–35, 92 S.Ct. at 2389–90.

The effect of our adoption of the Government's arguments would be more than far-reaching; it would be drastic. We have not been directed to, nor have we found any indication that it was the legislative intent to subject this interest to taxation in a donor's estate, and lay such a burden on residents of Texas and other community property states.[12] The logical extensions of a contrary holding would produce tax consequences solely with respect to Texas residents that could not conceivably have been intended by Congress.[13]

We look with no small degree of disfavor upon the Government's attempt to paint its dubious position over the colors of a canvas more than 30 years old. Congress may clearly choose to subject an interspousal transfer to taxation in the donor's estate under § 2036(a)(1), on the basis of these features of Texas community property law, but that result should not be achieved now by strained statutory construction and misinterpretation of state law, on the fiat of a federal agency. We have sought to lay the Government's position to rest, once and for all.

Accordingly, the judgments of the United States Tax Court in *Estate of Wyly v. Commissioner* and *Estate of Castleberry v. Com-*

---

12. We stress that our result does not place Texas spouses at a relative advantage over those in non-community property states. The position of the Tax Court, however, would impose a definite disadvantage on the Texas spouse. He or she is given a technical interest in the income from interspousal gifts and has no control or enjoyment, as we have described. The Government unrealistically seeks to impose tax liability on such an "owner." We have merely held that some portion of the value of interspousal gifts cannot be taxed in the *donor's* estate under § 2036(a)(1), by reference to a peculiar feature of Texas community property law. There is created no "dodge" or "avoidance;" the property may be subject to tax in other ways under other sections. The Texas spouse is placed on an equal plane with those in other states.

13. As counsel for the petitioners from the Tax Court cases have stated in one of their briefs:

> . . . Since Texas spouses cannot prospectively alter the community nature of income generated by separate property and the donor-spouse has no control over the transferred property, the Commissioner's asserted "right to the income" from transferred property must necessarily exist whether or not the property is income producing at or after the time of transfer. The Texas husband who gave his wife a diamond ring and a bouquet of roses on their anniversary would doubtless be surprised to discover that he had in fact made a transfer with a retained life estate which would cause the ring and roses to be includable in his gross estate at their fair full market value on the date of his death . . . Further, if the limited community interest of one spouse in income from separate property of the other spouse constitutes a "right to the income" from such property sufficient to invoke the federal estate tax, a transfer of an income interest would necessarily occur (and presumably be subject to gift tax) whenever Texas' community property laws become or cease to be applicable to property of spouses. Thus, upon marriage in Texas a spouse with separate property would presumably "transfer" a community income interest to the other spouse in such separate property. A similar taxable transfer would also necessarily occur upon divorce in Texas, upon spouses moving into or out of Texas, and upon inheritance or receipt by gift of property by one Texas spouse during marriage. *See* Comment, *Gift Tax Liability Resulting from Marriage in Texas,* 55 Texas L.Rev. 1427 (1977).

*missioner* are REVERSED, and those causes are REMANDED to that court for proceedings consistent with this opinion. The judgment of the District Court in *Frankel v. United States* is AFFIRMED.

RONEY, Circuit Judge, concurring in part and dissenting in part:

I concur in the result and that portion of the opinion which holds that the community interest of the donors in the income of the donated property was insufficient to amount to "the right to income from, the property" as provided in 26 U.S.C.A. § 2036(a)(1). Thus, I agree that no portion of the donated property should be included in the estates of the deceased taxpayers.

I respectfully dissent, however, from that portion of the opinion which holds that such interest was not "retained" "under" the transfers here made. If after the transfers the donors' remaining interest in the gifted property had been such as to qualify as "the right to income" under § 2036(a)(1), the tax consequences should be the same whether that interest was retained by the express provisions of donative instruments, or arose by operation of law in effect at the time of the gift.

The cases relied upon by Judge Garza do not compel a contrary decision. They hold only that a retained interest taxable under § 2036 may be created by an express or an implied agreement between the donor and donee at the time of transfer. *Rose v. United States*, 511 F.2d 259 (5th Cir. 1975); *First National Bank of Shreveport v. United States*, 342 F.2d 415 (5th Cir. 1965); *Guynn v. United States*, 437 F.2d 1148 (4th Cir. 1971); *Estate of Skinner v. United States*, 316 F.2d 517 (3d Cir. 1963); *Estate of McNichol v. Commissioner*, 265 F.2d 667 (3d Cir.), *cert. denied*, 361 U.S. 829, 80 S.Ct. 78, 4 L.Ed.2d 71 (1959); *Estate of Gilman*, 65 T.C. 296 (1975). Those cases do not support the proposition that the creation of a § 2036 retained interest may not arise solely by operation of law, but requires an act or omission of the donor. While the opinion of the Tax Court in *Estate of Gutchess*, 46 T.C. 554 (1966), gives some

support to the proposition, the statutory homestead residence rights involved in that case were not the kind of retained interest at which § 2036 was aimed. Had it been otherwise, it is doubtful the Tax Court would have used the language that it did.

In any event, a thorough discussion here is not called for because the point does not control the outcome of this case. The taxpayers' community interest in the separate property of their wives not being "the right to income from the property" within the meaning of § 2036(a)(1), it makes no difference whether or not that community interest was "retained" "under" the transfers.