ESTATE OF GIZELLA WELLS, DECEASED, DAVID I. WELLS, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Wells v. Commissioner
Docket No 1341-79.
United States Tax Court
T.C. Memo 1981-574; 1981 Tax Ct. Memo LEXIS 176; 42 T.C.M. (CCH) 1305; T.C.M. (RIA) 81574; September 30, 1981. *176 Decedent transferred property to a trust which provided that the trustee may, in his sole and absolute discretion, distribute to decedent corpus and/or income. Held, although decedent received the income from the trust, she did not receive it pursuant to an agreement, express or implied, entered into contemporaneously with the transfer of the property to the trust and therefore she did not retain "possession or enjoyment" of the property within the meaning of sec. 2036(a)(1). Remo Tinti, for the petitioner. Jack Joynt, for the respondent. EKMAN
MEMORANDUM FINDINGS OF FACT AND OPINION EKMAN, Judge: Respondent determined *177 a deficiency of $ 8,901.80 in petitioner's Federal estate tax. After concessions by the parties, the sole issue remaining for our decision is whether decedent retained any interest within the meaning of section 2036(a)(1) when she created a trust on December 23, 1969. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. David I. Wells (hereinafter sometimes referred to as petitioner) is the duly qualified executor of the Estate of Gizella Wells, deceased. Petitioner as executor filed a Federal estate return on December 1, 1976, with the District Director of Internal Revenue, New York, New York. The residence of petitioner at the time the petition herein was filed was Flushing, New York. On December 23, 1969, Gizella Wells, decedent, created a trust, Gizella Wells Trust, and simultaneously with the execution of the trust agreement transferred to her son. David I. Wells, as trustee $ 30,000 in cash. The trust was irrevocable and provided that upon its termination, corpus and accumulated income were to be distributed in equal shares "amongst the then surviving *178 daughters, both natural and adopted, of her son, David I. Wells * * *." According to the terms of the trust agreement, the trust would terminate upon the death of the grantor. [1]
Article III of the trust agreement provided: The Trustee may, in his sole and absolute discretion, distribute to or for the benefit of the Grantor during her lifetime, any part or all of the income of the trust. The Trustee may, in his sole and absolute discretion, distribute to or for the benefit of the Grantor during her lifetime, any part or all of the corpus of the trust. The trust agreement did not specifically provide for the retention or reservation of any rights under the trust by the grantor. Prior to the creation of the trust, decedent owned common stock in General Motors (400 shares), General Tire (282 shares) and Bethlehem Steel (60 shares) with a total value of approximately $ 34,000. In addition to the stock, she owned realty located at Webster *179 Avenue, Bronx, New York, a partnership interest in Wells Properties (hereinafter the Ithaca property) and bank deposits yielding $ 1,200 yearly interest. Decedent indicated to Arthur Steinthal, her accountant for almost 30 years, that she wished to make a gift to her grandchildren. Mr. Steinthal advised her that she could make a gift of $ 30,000 without incurring a gift tax. He also gave decedent advice concerning the sale of the Webster Avenue property on the installment method. Decedent, concerned with the effect of the gift on her cash flow and standard of living, was advised by Mr. Steinthal that if she sold her stock, made the $ 30,000 gift and sold the Webster Avenue property on the installment method she would receive more cash per annum than she had been receiving. [2]
*180 Inasmuch as all the grandchildren were minors at the time, decedent was advised that the gift be made in trust. Mr. Steinthal also told her that by placing the funds in a trust and making her son trustee with discretionary power to pay her income or corpus, her son would be able to give her funds from the trust if she "incurred a medical tragedy of some kind where additional money was needed". The trust agreement was executed on December 23, 1969, and the sale of the Webster Avenue property concluded on February 2, 1970. Decedent filed a gift tax return for 1969 reporting the value of the gift as $ 30,000, the full amount of the cash transferred to the trust. The $ 30,000 transferred to the trust was obtained from the sale of the General Motors, the General Tire, and the Bethlehem Steel common stock on December 19, 1969, and was used by the trust to purchase corporate bonds. David I. Wells as trustee deposited all monies received by the trust in a non-interest bearing trust account. He filed fiduciary income tax returns for the years 1970 through 1975, the year the trust was terminated. Mr. Wells as trustee distributed all the trust income to decedent until her death on *181 November 24, 1975, as follows: Year
Amount
1970
$ 2,323.24
1971
2,609.90
1972
2,621.40
1973
2,621.40
1974
2,621.40
1975
1,926.20
TOTAL
$ 14,723.54
Distributions were made as and when interest income was received by the trust which was anywhere from two to four times a year. Decedent never asked Mr. Wells for money from the trust and Mr. Wells never felt he was required to make an distributions to decedent. [3] He made the distributions to decedent because of his desire to see his mother travel, a love he knew she had when she was younger. During these years decedent, who was reluctant at first to take to money, made numerous trips, including trips to Japan and Israel, and continued to travel until she became too old to do so. Decedent's estimated tax payments for 1969 and 1970 were prepared *182 by Mr. Steinthal. Decedent's tax liability for 1969 was $ 738 and her estimated tax payments were $ 984. For 1970 decedent made estimated tax payments in the amount of $ 2,354.00 and her tax liability was $ 1,400. OPINION Respondent contends that decedent retained for life "possession or enjoyment" of the property transferred to the trust, the $ 30,000, and therefore the trust corpus is includible in her estate under section 2036. It is respondent's position that the trustee, in paying the income to decedent, was acting pursuant to a prearrangement in which it was understood that decedent would "enjoy" the income from the property she transferred to the trust. Petitioner contends that decedent unconditionally, absolutely, and irrevocably transferred the property to the trust and that no income was received by decedent pursuant to an arrangement entered into contemporaneously with the transfer to the trust. Therefore, petitioner contends, section 2036(a)(1) is inapplicable.
Section 2036(a) reflects a "legislative policy of subjecting to tax all property which has been the subject *183 of an incomplete intervivos transfer." United States v. O'Malley, 383 U.S. 627, 631 (1966). As stated in Commissioner v. Estate of Church, 335 U.S. 632, 645 (1949): an estate tax cannot be avoided by any trust transfer except by a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with * * * no right to possess or to enjoy the property then or thereafter. * * * Also see United States v. Estate of Grace, 395 U.S. 316 (1969); Estate of Gilman v. Commissioner, 65 T.C. 296 (1975), affd. per curiam 547 F.2d 32 (2d Cir. 1976). Section 2036(a) provides: (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein *184 of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact and before his death-- (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.
Section 2036(a)(1) applies if the decedent retained the "right to income" from or "possession or enjoyment" of the transferred property. Thus, although a decedent may not have reserved or retained the "right" to the income, the transfer may still come within section 2036(a)(1) if the decedent retained "possession or enjoyment" of the transferred property. [4]Skinner's Estate v. United States, 316 F.2d 517 (3rd Cir. 1963); McNichol's Estate v. Commissioner, 265 F.2d 667, 670-671 (3rd Cir. 1959), *185 affg. 29 T.C. 1179 (1958), cert. denied 361 U.S. 829 (1959); but see Stephens, Maxfield & Lind, Federal Estate and Gift Taxation, par 4.08(4)(c), p. 4-139, ft. 35 (4th Ed. 1978). Respondent contends that by receiving the income from the trust, decedent retained enjoyment of the transferred property. However, the mere receipt of all the income from the transferred property does not of itself trigger inclusion in the gross estate under section 2036(a)(1); such enjoyment must have been "retained". Estate of Green v. Commissioner, 64 T.C. 1049, 1061 (1975); Estate of Nicol v. Commissioner, 56 T.C. 179, 182 (1971); *186 Estate of Barlow v. Commissioner,55 T.C. 666, 670 (1971). See also Uhl's Estate v. Commissioner, 241 F.2d 867 (7th Cir. 1957), revg. and remanding 25 T.C. 22 (1955). Thus, section 2036(a)(1) applies only if the decedent "retained" enjoyment pursuant to an agreement or understanding reached contemporaneously with the transfer. McNichol's Estate v. Commissioner, supra; Estate of Hendry v. Commissioner, 62 T.C. 861, 872 (1974); Estate of Kerdolff v. Commissioner, 57 T.C. 643, 648 (1972); Estate of Barlow v. Comissioner, supra at 670; Estate of Beckwith v. Commissioner, 55 T.C. 242, 247 (1970), cf. Estate of Wyly v. Commissioner, 610 F.2d 1282 (5th Cir. 1980). As stated in section 20.2036-1(a), Estate Tax Regs.: * * * An interest or right is treated as having been retained or reserved if at the time of the transfer there was an understanding, express or implied, that the interest or right would later be conferred. [Emphasis supplied] *187 Petitioner points out that there was no reservation or retention in the trust agreement, but retention or reservation need not be expressed in the instrument of transfer, nor need it be legally enforceable, in order for section 2036(a) (1) to apply. Estate of McCabe v. United States, 201 Ct. Cl. 243, 475 F.2d 1142, 1146 (1973); Skinner's Estate v. United States, supra; McNichol's Estate v. Commissioner, supra; Atkinson v. United States, 231 F. Supp. 933 (E.D. S.C. 1964). The existence of such an agreement or prearrangement can be inferred from the facts and circumstances surrounding the transfer, and the subsequent use, of the property. Skinner's Estate v. United States, supra; McNichol's Estate v. Commissioner, supra; Estate of McCabe v. United States, supra; Estate of Kerdolff v. Commissioner, supra at 648; Estate of Hendry v. Commissioner, supra at 872. *188 The burden is upon petitioner to show that no implied understanding or arrangement existed. Estate of Hendry v. Commissioner, supra at 872, and cases cited therein. As we have said in the past, we realize (and respondent concedes) this burden requiring the taxpayer to come forth and disprove the existence of an intrafamily arrangement is a heavy one. Estate of Kerdolff v. Commissioner, supra at 648; Estate of Linderme v. Commissioner, 52 T.C. 305, 309 (1969), also see Skinner's Estate v. United States, supra at 520. However, as we stated in Estate of Hendry v. Commissioner, supra at 872-873: * * * "such difficulty does not justify exclusion from the operation of section 2036(a)(1)." This section is designed to include in the gross estate of the decedent, all property of decedent which was the subject of an incomplete inter vivos transfer. Estate of Roy D. Barlow, supra. The mandate underlying the includability of an interest pursuant to section 2036(a)(1) is broad. * * * Consequently, we cannot countenance an attempt *189 to circumvent the perimeters of this section by relieving the taxpayer of the burden of negating the existence of an agreement and, concurrently, requiring the respondent to establish that such understanding did exist. After careful consideration of the entire record, we find that petitioner has sustained his burden of showing that no income was received by decedent from the trust pursuant to an agreement, express or implied, entered into contemporaneously with the transfer of the property to the trust. Thus, decedent did not reserve or retain any "enjoyment or possession" of the trust property within the meaning of section 2036(a)(1) when she transferred such property to the trust. The intent of decedent in transferring the property to the Gizella Wells Trust was to provide a gift for her grand-children. She placed the property in an irrevocable trust and filed a gift tax return for the entire value of the property, $ 30,000. Compare Skinner's Estate v. United States, supra at 520 and Estate of Green v. Commissioner, supra at 1062-1063 (where the taxpayers filed gift tax returns reporting only the value of the property less *190 a retained life estate). Concerned with the effect of the gift on her cash flow, she specifically asked her accountant how such a gift would affect her standard of living. Only after being informed that she could afford to complete such a gift did decedent transfer the property to the trust. The forthright and credible testimony of Mr. Wells and Mr. Steinthal convinces us that decedent intended to make an absolute, unequivocal, irrevocable transfer. The trust provisions granting the trustee discretionary power to distribute income or corpus to decedent in and of themselves do not alter our finding that decedent's motive in transferring the property to the trust was to make a completed gift to her grandchildren; nor do they render the trust corpus includible under section 2036(a)(1). See Uhl's Estate v. Commissioner, supra.Mr. Steinthal informed decedent that such a provision would not affect the taxability of the gift and would allow the trustee to distribute funds to her in case of a medical emergency without violating the terms of the trust. As we have said, the triggering event of section 2036(a)(1) is not the mere receipt of income, see Estate of Green v. Commissioner, supra; *191 some arrangement or understanding, and certainly not the mere inclusion of a provision allowing the trustee to distribute and the decedent to receive such income or corpus, is necessary for section 2036(a) to apply. Uhl's Estate v. Commissioner, supra.
The cash flow analysis which her accountant of almost 30 years presented to decedent further supports our finding that decedent transferred the property to the trust without an agreement, express or implied, that she would receive the income. Prior to the sale of the Webster Avenue property and the gift, decedent lived comfortably on $ 8,400 per year. The figures presented to her revealed that she could make the gift and still have a yearly income of $ 9,900, $ 1,500 more than she had been accustomed to. And indeed, in the years immediately following the transfer, decedent, as projected, did not need the income from the trust for her yearly support or ordinary living expenses; she used that income to take trips all over the world. Clearly decedent never counted on, relied upon, or expected the income from the trust. This is not a case where the grantor used the income from the trust for ordinary living *192 expenses or where the grantor was in the identical position before and after the transfer. See, e.g., Guynn v. United States, 437 F.2d 1148 (4th Cir. 1971); Estate of Kerdolff. v. Commissioner, supra at 649. Faced periodically with the choice of accumulating the income for his children or distributing the income to his mother so that she could travel, Mr. Wells chose the latter. But he was never obligated to give the money to his mother and with each period he could change his mind. Decedent never asked for any of the income and Mr. Wells never felt he was required to make any distributions. It was his decision alone, exercised in his absolute discretion. Our conclusion is further buttressed by the uncontradicted testimony of Mr. Wells that he never at any time prior to the creation of the trust discussed with his mother his discretionary power to distribute to her and that she was reluctant at first even to take the money. Moreover, her accountant did not have any discussions with Mr. Wells at the time Mr. Wells was proposed as trustee and Mr. Wells was not even familiar with his discretionary powers or the terms of the trust until the *193 trust was executed. If such trust income was indeed intended to be distributed to the grantor pursuant to an implied agreement, surely someone, prior to the drafting and the execution of the trust agreement, would speak with the trustee and take some type of precautions to ensure that he would follow the implied agreement. Respondent contends that petitioner placed in trust the more conservative assets and kept the more speculative assets allegedly to pay for living expenses. Thus, respondent continues, if decedent intended the non-trust income to provide her with enough funds to pay for living expenses, she would have kept the more conservative assets for that purpose and placed the more speculative assets in the trust. However, we cannot agree that by selling the stock and transferring the proceeds to the trust decedent necessarily expected to use the trust income for living expenses. Of the yearly projected income of $ 9,900, only $ 1,500 (income from the Ithaca property) was generated by assets which may be called somewhat speculative. [5] Moreover, there is nothing in the record to indicate that decedent viewed one set of assets as more conservative than the other or that *194 she at any time considered risk in determining which assets to place in trust. In fact, it would follow normal practice to place in trust for minor grandchildren the type of conservative assets which a prudent fiduciary is permitted to hold. Respondent next points out that of the projected $ 9,900 yearly income, approximately $ 2,000 represented a return of capital through the installment sale of the Webster Avenue property. Decedent, however, was concerned with her cash flow before the gift in comparison with her cash flow after the gift. Again, this contention indicates, if anything, that decedent had available for her living expenses more than she anticipated because part of the $ 9,900, as return of capital, was not subject to tax and thus decedent could afford to make a completed gift. Respondent's implication that, because part of the projected $ 9,900 income represented return of capital, *195 decedent must have intended that part or all of the trust income would be used for her support, is without support in the record. Respondent next contends that Mr. Wells must have contemplated that at some time in the future his mother, because of her age or health, would be unable to travel. Therefore, contends respondent, the opening of a non-interest bearing trust account negates a finding that Mr. Wells, as trustee, made distributions to decedent because of his desire to see her travel but confirms that he was instead acting pursuant to the prearrangement. Preliminarily we note that there is nothing in the record to justify respondent's conclusion. Moreover, this contention, aside from being totally speculative, is not at all probative of whether any agreement existed between decedent and her son. [6] The decision of Mr. Wells to open a non-interest bearing account for the trust is not inconsistent with his decision, at that time, to distribute the income from the trust to his mother. Furthermore his use of a non-interest bearing account is no more consistent with a purported agreement than otherwise. *196 Respondent finally contends that the timing and amount of the estimated tax payments made by decedent during 1970 indicate she did not intend to transfer the property absolutely. Decedent, during 1970, had a credit available in the amount of $ 246 from an overpayment of tax in 1969 and made estimated tax payments totalling $ 2,354. Thus, respondent contends, decedent, with the advice of the accountant who prepared an exhaustive analysis of her cash flow, would not have made estimated tax payments in those amounts had she not intended to make an incomplete transfer of the property and retain the income from the trust. Mr. Steinthal testified that in preparing the 1970 estimated tax he did not include the income from the trust. Again, the record does not support respondent's contention. [7] Even if the trust income were included, decedent's estimated tax payments exceeded the tax due by $ 1,200 [8] so that a substantial overpayment existed whether the computation of estimated tax included or excluded the trust income. Thus, it is obvious that an overestimation of decedent's taxable income resulted from a cause other than the anticipated receipt of the trust income. Respondent *197 seeks to prove too much by this argument. The tax attributable to the $ 2,323.24 of trust income in decedent's tax bracket would not account for the overestimate. In any event, we cannot find from those payments that decedent received the trust income pursuant to a prearrangement or that she made an incomplete transfer. [9]
*198 In view of the testimony of Mr. Steinthal and Mr. Wells, the cash flow of decedent before the transfer as compared with that after the transfer and the fact that this cash flow analysis was presented to decedent prior to the transfer, the lack of any discussions between decedent and the trustee prior to the transfer, decedent's use of the trust income for travel and not ordinary living expenses, and decedent's desire to make a gift, we find that petitioner has sustained his burden of proving that decedent transferred the property to the trust absolutely, unequivocably, irrevocably, and without possible reservations and that she did not receive the trust income pursuant to an agreement entered into contemporaneously with the transfer of the property to the trust. Respondent's various contentions must fail, since the mere receipt of trust income is not enough to trigger section 2036(a)(1) and the record is devoid of any other factual support for his position. In view of the foregoing, the trust corpus is not includible in decedent's gross estate under section 2036. Decision will be entered under Rule 155. Footnotes
1. If, on termination of the trust, distribution was to be made to any person under 21, title to the share of that person would vest but payment could be deferred, in the discretion of the trustee, until such minor attained the age of 21.↩
2. A summary of Mr. Steinthal's analysis of decedent's cash flow based upon the sale of the stock, the $ 30,000 gift and the sale of the Webster Avenue property on the installment method is as follows: ↩
1969
1970
Dividends
Received $ 2,100
Projected to receive no
dividends because of sale of
stock and gift of $ 30,000 of
the proceeds; balance of proceeds,
$ 5,000 [sic], to be invested
in Treasury bond, $ 200
projected income.
Savings
Accounts
Received $ 1,200
Projected $ 1,200
Webster Avenue
Property Received net
rental
After sale on installment method,
income of $ 3,600
projected monthly payments to be
received $ 509.86, $ 6,100 annually,
plus interest income of $ 900 on
$ 15,000 downpayment received on sale.
Ithaca Property
Received $ 1,500
Projected $ 1,500
Total income
$ 8,400
$ 9,900
3. Mr. Wells never at any time discussed with decedent his discretionary power to distribute to her. Furthermore, her accountant, Mr. Steinthal, did not have any discussions with Mr. Wells at the time he was proposed as trustee and Mr. Wells was not even familiar with the terms of the trust or his discretionary powers until the day the trust was executed.↩
4. Apparently respondent is not contending that decedent had a "right to the income" from the property. See also Covey, "Power to Distribute to Grantor", 98 Trusts and Estates 322 (1959); Estate of Uhl v. Commissioner, 25 T.C. 22 (1955), revd. and remanded 241 F.2d 867 (7th Cir. 1957); Paolozzi v. Commissioner, 23 T.C. 182↩ (1954) (rights of creditors of grantor in discretionary trust).
5. Other sources of projected income included income from a Treasury bond ($ 200), savings accounts ($ 1,200), monthly payments from the sale of the Webster Avenue property ($ 6,100), and interest on the $ 15,000 downpayment received on sale of the Webster Avenue property ($ 900).↩
6. We also note that the trust instrument provided that if David predeceased decedent (or resigned or was incapable to act as trustee), David's wife, Phyllis, and upon her resignation or incapacity, Sylvia Judith Chafetz was to act as successor trustee. There is no suggestion by respondent of any agreement between decedent and her daughter-in-law or between decedent and Ms. Chafetz.↩
7. Respondent notes that in the previous year decedent made estimated tax payments of only $ 984. However, in 1970 decedent sold the Webster Avenue property which resulted in a substantial capital gain, even considering installment sale reporting, in the year of sale. ↩
8. The tax due was $ 1,400 and the estimated tax payments, including the credit available from the overpayment in 1969, was $ 2,600. ↩
9. The only reference at trial to the estimated tax payments was respondent's single question to Mr. Steinthal concerning whether he included the trust income in computing the estimated tax payments and Mr. Steinthal's response that he did not. Neither Mr. Steinthal nor anyone else testified further as to those payments. Respondent, on brief, made the contention that the estimated payments reveal that decedent did not intend an absolute transfer. Petitioner, in his reply brief, made an effort to explain and justify those estimated tax payments, an effort which is not only unsupported by the record but mathematically inaccurate. The record itself, however, adequately meets respondent's contention.↩