**Daniel J. MAHONEY Jr., Executor of the Estate of James M. Cox Jr., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 86–3086.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 27, 1987.

Decided Oct. 16, 1987.

Michael L. Paup, D. Patrick Mullarkey, Tax Div., Dept. of Justice, Roger M. Olsen, Washington, D.C., Dale Goldberg, Asst. U.S. Atty., Cincinnati, Ohio, Robert S. Pomerance (argued), Washington, D.C., Steven W. Parks, for defendant-appellant.

Robert P. Bartlett, Jr., Dayton, Ohio, Albert H. Turkus (argued), Dow, Lohnes & Albertson, Washington, D.C., Bernard J. Long, Jr., for plaintiff-appellee.

Before KENNEDY and NORRIS, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Defendant United States of America appeals the district court judgment granting a refund of estate taxes to plaintiff Daniel J. Mahoney Jr., executor of the estate of James M. Cox Jr. ("estate"). The district court ordered the refund based on its determination that James M. Cox Jr., the decedent, had not "made a transfer" under I.R.C. § 2036(a) (1982) when he paid consideration to his father in conjunction with the father's transfer of stock into a trust naming the decedent as life beneficiary. *Mahoney v. United States*, 628 F.Supp. 273 (S.D. Ohio 1985). The government argues on appeal, and we agree, that the district court erred in interpreting the term "transfer" in section 2036(a). Accordingly, we reverse.

## I.

In December, 1939, James M. Cox Sr. ("Governor Cox" [1]), decedent's father, purchased all of the outstanding stock in the Atlanta Journal Company ("Atlanta Journal"). As a result of the purchase and a subsequent recapitalization, Governor Cox received all 4,000 shares of Atlanta Journal common stock, which had a cost basis of $6.2225 per share. Governor Cox used the Atlanta Journal common stock in 1941 to fund five trusts.

The "James M. Cox Jr, Trust" ("Trust") [2] named the decedent as the income beneficiary for life and named as remaindermen decedent's wife and his lineal descendants. The Trustee was Governor Cox's attorney. Governor Cox funded the Trust with 750 shares of the Atlanta Journal common stock. In exchange, the decedent executed an interest-bearing promissory note payable to his father in an amount equal to Governor Cox's basis in the 750 shares, $4,666.88. Decedent's promissory note stated that it was executed "in payment for 750 shares of common stock of the Atlanta Journal Company." The Trust instrument likewise acknowledged that on the day the Trust was established, decedent "executed and delivered [a note] in payment for the stock which is the subject matter of this trust."

The Trust further provided that the Trustee was to pay the principal and interest on the note with the income from the 750 shares. The stock generated dividends of $4,500 in 1941, and of $7,500 annually from 1942 to 1944. During those four years, the dividends were applied to discharge the note (principal and interest) in full. However, the annual payments on the loan were not made by the Trustee as the Trust instrument directed, but were

---

1. James M. Cox Sr. was a former Governor of the State of Ohio and Democratic Party nominee for President of the United States in 1920. *See* Appellee's Brief at 3.

2. The other four trusts were for the benefit of Governor Cox's wife, his two daughters (decedent's half-sisters), and his former son-in-law.

withheld by the Atlanta Journal and paid directly to Governor Cox. Regardless of the actual payment procedure, however, the decedent treated the dividends used to pay off the note as constructively received by him for income tax purposes: he reported those dividends as his income and claimed deductions for the amounts used to satisfy interest on the note.

Several years after the Trust was created, the Internal Revenue Service (IRS) reviewed the transaction and requested that Governor Cox file a gift tax return. Governor Cox complied, but reported no taxable gift, maintaining that the $4,666.88 paid by decedent for the 750 shares represented the fair market value of Altanta Journal stock in 1941. After an audit, the IRS challenged Governor Cox's valuation of the stock. The parties settled the dispute in 1952, however, agreeing that the fair market value of Atlanta Journal common stock in 1941 was $55 per share, or $41,250 for 750 shares. Governor Cox thereafter reported a taxable gift of $36,583, the agreed value of the stock in 1941 less the consideration received in discharge of decedent's note.

The decedent died in 1974. On his estate's federal tax return, none of the property from the "James M. Cox Jr. Trust" was included in decedent's gross estate. The estate took the position that decedent had not "made a transfer" of property to the Trust, but that any transfer had been made by Governor Cox. The estate therefore contended that the "Transfers with retained life estate" provision of I.R.C. § 2036(a) (1982) was inapplicable.

The IRS audited the return and assessed an estate tax deficiency. The IRS found irrelevant the fact that Governor Cox, not the decedent, made the actual transfer of stock into the Trust. The IRS reasoned that the transaction left the decedent in the same economic position as if he had purchased $4,666.88 worth of stock (the equivalent of 85 shares at $55 per share) outright from his father, transferred those shares to the Trust for the benefit of his heirs, and reserved for himself an equitable life estate in the stock. Under this theory, the government concluded that in substance the decedent had "made a transfer" under section 2036(a) and, therefore, that 11.3136 percent[3] of the date-of-death value of the trust property, or $5.5 million, was includable in decedent's gross estate. The estate paid the asserted deficiency, filed an administrative claim for refund, which was denied, and then brought this action in district court.

After conducting a bench trial, the district court granted the estate a refund. The court initially found that Governor Cox had funded the Trust through a partial sale and partial gift, *Mahoney*, 628 F.Supp. at 278, and that the decedent, not the Trust, had paid the $4,666.88 in consideration to Governor Cox for the sale portion of the stock transfer, *id.* at 279–80. The court further concluded, however, that the decedent purchased only a life estate in the Trust corpus, essentially because Governor Cox exclusively controlled the creation and funding of the Trust. *Id.* at 280–82. On this basis, the district court held that the decedent did not make a "transfer" into the Trust under section 2036(a) and, therefore, that no part of the Trust should be included in decedent's gross estate. *Id.* at 281. The court ordered a refund of $7.9 million paid to the estate. This timely appeal ensued.

## II.

Before addressing the district court's interpretation of the term "transfer," the estate asserts an independent ground for affirming the court's decision. The estate contends that the district court erred in holding that the decedent paid the $4,666.88 in consideration to Governor Cox. In support of this argument, the estate asserts several alternative views of the evidence: that Governor Cox retained an income interest in the stock dividends to the extent of his basis in the transferred stock;

---

**3.** The amount paid for the stock by the decedent in 1941, $6.2225 per share, was 11.3136% of the fair market value in 1941, $55 per share. The remaining 88.6864%, or $48.7775 per share, represents the value of Governor Cox's gift to the trust in 1941, for which Governor Cox paid the gift tax in 1952, and is not relevant to the instant case.

that the Trust, not the decedent, discharged the note; that the decedent was a surety for the Trust's debt; or that the debt created by the note was not a "real" debt in view of the family relationship and the decedent's healthy financial status in 1941. Because the decedent did not pay the consideration, the argument concludes, he could not have "made a transfer" under section 2036(a).

 The district court's conclusion that the decedent paid the consideration to Governor Cox, however, is a finding of fact that a reviewing court may not reverse unless "clearly erroneous." Fed.R.Civ.P. 52(a).[4] A finding of fact will only be clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). In addition, the clearly erroneous standard is applicable "even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Id.* 470 U.S. at 574, 105 S.Ct. at 1512; *see* Fed.R.Civ.P. 52(a), advisory committee notes, 1985 amendment. Under this deferential standard, the appellate court must

vigilantly refrain from conducting a *de novo* review of the evidence. *Bessemer City*, 470 U.S. at 573–74, 105 S.Ct. at 1511–12. Viewing this record in its entirety, *id.* at 574, 105 S.Ct. at 1512, we conclude that the district court did not clearly err.

The Trust instrument itself declared that the 750 shares of Atlanta Journal stock were transferred into the Trust in exchange for consideration paid by the Trustee *and* the decedent. The Trustee, however, never made a payment to Governor Cox. Rather, the decedent executed a note, payable to Governor Cox, that was "in payment for" the 750 shares. The execution of the note "in payment" for the stock and the corresponding provision in the Trust document require the conclusion that, in form, the transaction was arranged so that the decedent would pay the consideration. Although the note was discharged by the corporation withholding a portion of the dividend payments each year over a four year period, the decedent treated the funds used to discharge the note as his constructive income and claimed deductions for the interest paid. The decedent's income tax treatment of the payments confirmed that the transaction was completed in substance consistent with what it purported to be in form: a payment from the decedent to his father. The estate's alternative constructions of the evidence, although perhaps plausible, do not mandate a finding of clear error.[5] "Where there are

4. The estate also argues that the decedent paid no consideration to Governor Cox, as a matter of law, because Governor Cox retained an interest income in the stock under the Trust terms, citing *Greene v. United States*, 237 F.2d 848 (7th Cir.1956), and *Estate of Fry v. Commissioner*, 9 T.C. 503 (1947), *acq.*, 1948–2 C.B. 2, and because decedent's note did not represent a valid indebtedness of the decedent, citing *Deal v. Commissioner*, 29 T.C. 730 (1958). None of these cases, however, addresses the question of whether an individual has paid consideration to the grantor of a trust when he executes an interest-bearing note payable to the grantor, the note is in fact discharged in full, and the individual treats the amounts used to discharge the note as his constructive income. We therefore conclude that the cited cases do not control the resolution of the unique∙ factual situation that this case presents.

5. In support of its argument that the district court clearly erred, the estate points out: that by 1941, the earnings prospects of the Atlanta Journal were so good that the dividends from the common stock would certainly be sufficient to discharge the note; that Governor Cox's control over the Atlanta Journal ensured that such dividend payments would be forthcoming; and that in 1941, the decedent was financially well off and could have paid the $4,666.88 in cash, if the parties intended him to pay the consideration. From these facts, and considering the parties' family relationship, the estate concludes that the parties did not intend that the decedent pay the consideration, and that decedent's note did not represent a valid debt. Finally, the estate asserts that the withholding of the dividends by the Atlanta Journal precludes the finding that the decedent discharged the note.

The estate's contention that this intrafamily debt was not "real" and, therefore, that the dece-

two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Bessemer City*, 470 U.S. at 574, 105 S.Ct. at 1512. Accordingly, we hold that the district court did not clearly err in holding that the decedent paid consideration to Governor Cox at the time the stock was transferred to the Trust.

## III.

We now turn to the district court's application of section 2036(a). In determining whether the decedent's payment of consideration to Governor Cox in conjunction with the creation of the Trust was a transfer under the statute, the court posed the following question:

> Did James M. Cox, Jr., purchase an undivided or full ownership interest in [11.-3136] percent of the 750 transferred shares, or did he purchase only an equitable life estate in the transferred stock?

*Mahoney*, 628 F.Supp. at 279. In answering this question, the court found important that Governor Cox owned the stock before the transfer, and that he transferred the stock directly to the Trustee without issuing stock certificates to the decedent. *Id.* at 280–81. The dispositive factors in the district court's analysis, however, were that Governor Cox alone created the Trust, funded it, and named the remaindermen, consulting only with his attorney, and that the decedent had no control over, or input into, the terms of the Trust. *Id.* The conclusion concerning the defendant's lack of control, however, did not arise from the transaction itself or the parties' characterization of it, but from the testimony

adduced at trial of business associates and relatives to the effect that Governor Cox was "the boss" in virtually all affairs under his domain. Thus, viewing what it termed "the reality of the creation and funding of the ... Trust," *id.* at 280, the court concluded that "[a]ll James M. Cox received in exchange for the consideration he furnished was the right to receive income for his life." *Id.* at 281. On this basis, the court held that the decedent had not "made a transfer" under section 2036(a). For the following reasons, we reverse.

Under section 2036(a)(1), I.R.C. § 2036(a)(1) (1982),[6] the decedent's gross estate will include the date-of-death value of property if three conditions are met: (1) the decedent must have made an inter vivos transfer of the property; (2) the decedent must have retained the right to the income from the property; and (3) this retention must have been for the decedent's life. *National City Bank of Cleveland v. United States*, 371 F.2d 13, 15 (6th Cir. 1966). In the instant case, there is no dispute that the decedent "retained" the right to the Trust income for his life. *Mahoney*, 628 F.Supp. at 278. The only issue, therefore, is whether the decedent "made a transfer" within the meaning of the statute.

This court has emphasized that the term "transfer" is not to be interpreted in a restrictive manner and should be interpreted to effectuate the purposes of section 2036(a). *See Estate of Shafer v. Commissioner*, 749 F.2d 1216, 1221–22 (6th Cir. 1984). "The general purpose of the statute

---

dent did not discharge the debt is not compelling on the facts of this case. The decedent executed an interest-bearing promissory note in payment for the stock. While this formality itself is not conclusive as to the validity of the debt, the fact that the note was discharged in full, including the interest due, renders immaterial whether the discharged debt was ever legally binding. It was paid off; the question becomes who made the payments on the debt. In our view, the decedent's tax treatment of the payments as his constructive income is more than sufficient to support the district court's conclusion that the decedent in substance discharged the note.

6. Section 2036(a) states in pertinent part:

The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property....

26 U.S.C. § 2036(a)(1) (1982).

was to include in a decedent's gross estate transfers that are essentially testamentary —i.e., transfers which leave the transferor a significant interest in or control over the property transferred during his lifetime." *United States v. Estate of Grace,* 395 U.S. 316, 320, 89 S.Ct. 1730, 1733, 23 L.Ed.2d 332 (1969); *see also Estate of Wyly v. Commissioner,* 610 F.2d 1282, 1290–91 (5th Cir.1980). By taxing essentially testamentary transactions, section 2036(a) prevents "circumvention of federal estate tax by use of schemes which do not significantly alter lifetime beneficial enjoyment of property supposedly transferred by a decedent." *Id.* at 1290; *see also Estate of Shafer,* 749 F.2d at 1222. The applicability of section 2036(a), therefore, is not controlled by the "various niceties of the art of conveyancing," *Commissioner v. Estate of Church,* 335 U.S. 632, 642, 69 S.Ct. 322, 327, 93 L.Ed. 288 (1949) (quoting *Klein v. United States,* 283 U.S. 231, 234, 51 S.Ct. 398, 399, 75 L.Ed. 996 (1931)), but is instead dependent upon "the nature and operative effect of the transfer," *Estate of Grace,* 395 U.S. at 323, 89 S.Ct. at 1735 (quoting *Estate of Spiegel v. Commissioner,* 335 U.S. 701, 705, 69 S.Ct. 301, 303, 93 L.Ed. 330 (1949)). As such, the statute operates to tax transfers of property "that are too much akin to testamentary dispositions not to be subjected to the same excise." *Helvering v. Hallock,* 309 U.S. 106, 112, 60 S.Ct. 444, 448, 84 L.Ed. 604 (1940).

Moreover, the purposes of section 2036(a) and the Supreme Court's opinion in *Estate of Grace* counsel against the utilization of evidence that is extrinsic to the transaction and unrelated to the parties' understanding of it in an attempt to reconstruct the creation of a forty year old trust, especially when the only parties to the transfer have long been deceased. *See Estate of Grace,*

395 U.S. at 320, 322–24, 89 S.Ct. at 1734–35. Reliance on such inquiries, based usually on faulty memories and self-serving testimony from family members, can serve only to undermine the consistent and proper application of the statute.[7] *Cf. id.* at 323, 89 S.Ct. at 1734 (inquiries into subjective intent in intrafamily transfers create "substantial obstacles to the proper application of the federal estate tax laws."). Thus, the includability of a trust corpus under section 2036(a) should, as a general rule, be determined from the trust documents, the timing of the transfers, the value of property transferred, verifiable contemporary characterizations of the transaction, and its objective economic effects. *See, e.g., Estate of Sinclaire v. Commissioner,* 13 T.C. 742, 745–46 (1949) ("true nature of the transfers" not dependent on trust terms alone, but was determined from the timing of two transactions, the nature of the property involved, and other "facts and circumstances attendant" to the transfers, none of which was based on extrinsic evidence); *cf. Estate of Grace,* 395 U.S. at 323–24, 89 S.Ct. at 1734–35 (applicability of reciprocal trust doctrine depends on terms of trust, timing of the transactions, and their objective economic effects, not on inquiries into the parties' subjective intent); *Estate of Whitt v. Commissioner,* 751 F.2d 1548, 1558–59 (11th Cir.1985) (whether decedent retained a life estate determined from "the surrounding circumstances, particularly the manner in which the parties have dealt with the property"). Only if this evidence is insufficient to disclose the "nature and operative effect" of the transaction, *see, e.g., Estate of Shafer,* 749 F.2d at 1218–20 (extrinsic evidence admitted to resolve ambiguity in deed of sale concerning who purchased the land); *cf. Estate of Grace,* 395 U.S. at

---

7. In the instant case, for example, none of the witnesses could claim knowledge of the circumstances surrounding the creation of the James M. Cox Jr. Trust. Decedent's two half-sisters, who offered the testimony most probative of what actually occurred in 1941, had no specific memory of the creation of this Trust and had only hazy recollections of conversations with the decedent occurring many years later concerning the Trust. Moreover, under the Trust terms, if the decedent were to die without any lineal descendants, which he did, that portion of the Trust corpus which was to devolve to decedent's lineal descendants would instead devolve to the trusts created in 1941 for the benefit of decedent's half-sisters, *see supra* note 2. As life beneficiaries of those trusts, therefore, the half-sisters have a financial stake in the outcome of this case.

**648**

324 n. 10, 89 S.Ct. at 1735 n. 10, or if the parties' characterization of it appears calculated to circumvent the estate tax laws, *see Estate of Wyly*, 610 F.2d at 1290–91, should a court need to resort to extrinsic evidence to find the "reality" of the trust's creation.

With these principles in mind, we proceed to analyze the trust transfer at issue here. The Trust instrument stated that Governor Cox transferred the 750 shares of Atlanta Journal common stock to the Trust in exchange for consideration paid by the Trustee and the decedent. As we affirmed above, the decedent alone paid the consideration by executing and discharging a promissory note, which stated: "This note is given *in payment for 750 shares* of common stock of The Atlanta Journal Company" (emphasis added). Similarly, the Trust provision delineating the method of repayment on the note stated that the decedent's note was "executed and delivered to [Governor Cox] *in payment for the stock* which is the subject matter of this trust" (emphasis added). These provisions show that the Trust was arranged by the parties so that the decedent would pay consideration to Governor Cox for all 750 shares of stock. Accordingly, the decedent's note was executed in an amount determined by Governor Cox's basis in all 750 shares, again evidencing that the decedent paid for the stock which was then transferred to the

Trust. During the pendency of his gift tax dispute with the IRS, Governor Cox likewise maintained that the decedent had paid the fair market value of the stock in 1941. Under the Trust documents and the other objectively verifiable circumstances surrounding the 1941 transaction, therefore, the manifest intention of the parties was that the decedent would pay for the stock, which would then be transferred into the Trust.

 Under these circumstances, we conclude that it was unnecessary for the district court to consider evidence extrinsic to the transaction in an attempt to ascertain the "reality" of the trust transfer.[8] The Trust documents are unambiguous,[9] *cf. Estate of Shafer*, 749 F.2d at 1218 (IRS unable to determine from documents who paid for the property), and in any event, lend no support to the district court's revisionist assertion that the decedent purchased only a life estate in the Trust corpus. Nothing in the form or execution of the transaction suggests that the parties intended that decedent's consideration was in payment for anything less than the total "bundle" of rights inherent in owning property. The "nature and operative effect of the transfer," as the parties themselves arranged it and characterized it at the time, disclose that in substance the decedent paid Governor Cox for 750 shares of Atlanta

**8.** The estate asserts that control over the trust terms is an essential element to finding a "transfer" under section 2036(a). No explicit authority supporting the assertion, however, has been cited or found. In addition, the cases on which the estate relies do not purport to establish an absolute "control" requirement and are explainable on other grounds. *See Fidelity-Philadelphia Trust Co. v. Smith*, 356 U.S. 274, 78 S.Ct. 730, 2 L.Ed.2d 765 (1958); *Estate of Becklenberg v. Commissioner*, 273 F.2d 297 (7th Cir.1959); *Estate of Cain v. Commissioner*, 37 T.C. 185 (1961); *Estate of Bergan v. Commissioner*, 1 T.C. 543 (1943), *acq.*, 1943 C.B. 2. To be sure, the courts have held that such control is a sufficient basis on which to include a trust corpus under section 2036(a), *see, e.g., Estate of Shafer*, 749 F.2d at 1221–22, but to our knowledge none has held it to be a necessary condition to includability. Indeed, imposition of a "control" requirement would seemingly transgress this court's admonitions that "transfer" is to be given its usual meaning, *National City Bank of Cleveland*

*v. United States*, 371 F.2d 13, 16 (6th Cir.1966), and is not to be restrictively interpreted, *Estate of Shafer*, 749 F.2d at 1221. We further note that in other contexts, courts have included trust property in a decedent's gross estate under section 2036(a) even though the transferor apparently had no control over the terms of the trust into which the property was transferred. *See, e.g., Estate of Kinney v. Commissioner*, 39 T.C. 728 (1963) (property transferred by life beneficiary into existing trust she did not create included in gross estate). We accordingly decline to put this gloss on the definition of transfer under the statute.

**9.** Any ambiguity in this transaction concerned only *who* paid the consideration, not *what* the consideration was "in payment for." The district court, therefore, properly considered extrinsic evidence, including individual tax returns and other related correspondence, to resolve this ambiguity. *See Estate of Shafer*, 749 F.2d at 1218.

Journal common stock, which were then transferred to the James M. Cox Jr. Trust. Consequently, we conclude that although Governor Cox nominally created the Trust, the decedent must be considered the effective grantor of the Trust to the extent of his contribution.[10] *See Estate of Marshall v. Commissioner*, 51 T.C. 696 (1969); *Estate of Sinclaire v. Commissioner*, 13 T.C. 742 (1949); *Estate of Schwartz v. Commissioner*, 9 T.C. 229 (1947).

Since the named remaindermen were the decedent's wife and lineal descendants, the natural objects of his bounty, we have no difficulty in concluding that the decedent's contribution to the Trust was "essentially testamentary," *Estate of Grace*, 395 U.S. at 316, 89 S.Ct. at 1730, and therefore includable under section 2036(a).[11] A transfer into trust, in which the effective transferor retains a life estate, remainder to the effective transferor's heirs, is a transaction that is "too much akin to testamentary dispositions not to be subjected to the same excise," *Hallock*, 209 U.S. at 112, 60 S.Ct. at 448. *Cf. Estate of Shafer*, 749 F.2d at 1221–22. The later

revaluation of the Trust corpus in resolution of Governor Cox's gift tax dispute with the IRS cannot change the "nature and operative effect of the transfer," although it does affect what portion of the Trust is includable in the decedent's gross estate. Accordingly, we hold that because the $4,666.88 paid by the decedent represented 11.3136 percent of the value of the stock transferred into the Trust in 1941, the same portion of the date-of-death value of the Trust must be included in decedent's gross estate under section 2036(a).[12]

This holding is consistent with the mandate that the term "transfer" should be interpreted to effectuate the purposes of section 2036(a). *See Estate of Shafer*, 749 F.2d at 1221–22. By paying the consideration to Governor Cox "in payment for" the stock, the decedent in substance purchased 11.3136 percent of the 750 shares of Atlanta Journal stock, or approximately 85 shares, which were then transferred into the Trust, with the remainder to his wife and children. Since the decedent was the only life beneficiary, he received the income from the 85 shares for the rest of his

---

**10.** The estate disputes the characterization of the transaction on the ground that the decedent could not have used Governor Cox as a "conduit" to establish the Trust. Two observations are pertinent. First, from a legal standpoint, this argument is just a variation on the estate's assertion that the decedent must have "controlled" the Trust terms to have made a transfer under section 2036(a), an assertion we have rejected. *See supra* note 7. Second, as a factual matter, the estate's argument relies exclusively on the extrinsic evidence taken by the district court to the effect that Governor Cox was "the boss." We have already ruled, however, that this evidence was unnecessary to discover the "nature and operative effect" of the transaction. Accordingly, we reject the estate's contention.

**11.** "[T]he taxing authorities need do no more than apply considered and accepted doctrine of the law of trusts to reach the conclusion that he who pays another for the creation of a trust wherein the payor shall be granted a beneficial interest ... which he desires may be taxed as one who has transferred the property retaining an interest therein." *Newberry's Estate v. Commissioner*, 201 F.2d 874, 876–77 (3d Cir.1953) (footnote omitted).

**12.** Moreover, even if we were disposed to consider the district court's findings that arose from

the irrelevant extrinsic evidence, we would still find the Trust corpus includable under section 2306(a) to the extent of the decedent's contribution. Initially, it is clear that Governor Cox's transfer of the stock directly into the Trust without issuing certificates to the decedent is not dispositive. *See Estate of Shafer*, 749 F.2d at 1221 (irrelevant that the effective grantor never held legal title to property transferred into trust); *see also Commissioner v. Estate of Church*, 335 U.S. 632, 642, 69 S.Ct. 322, 327, 93 L.Ed. 288 (1949) (application of section 2036(a) not dependent on "various niceties of the art of conveyancing" (quoting *Klein v. United States*, 283 U.S. 231, 234, 51 S.Ct. 398, 399, 75 L.Ed. 996 (1931))). In addition, we would not find significant that the creation and funding of the Trust was the "sole act" of Governor Cox. In *National City Bank*, this court held that, in order to make a transfer under section 2036(a), the decedent's life estate must arise from some "affirmative" or "positive" action on the decedent's part. 371 F.2d at 16–17; *Estate of Shafer*, 749 F.2d at 1221 n. 9. As our disposition of this case indicates, we believe this requirement is satisfied by a life beneficiary's execution and discharge of a note payable to the nominal grantor in establishing a trust, at least where the remaindermen are decedent's wife and lineal descendants. Accordingly, the decedent's contribution to the Trust would still constitute a "transfer" under the statute.

life. The conclusion readily follows, therefore, that the transfer did "not significantly alter [the decedent's] lifetime beneficial enjoyment" in the $4,666.88 that he purported to transfer during his lifetime. *Estate of Wyly*, 610 F.2d at 1290. The transfer is thus taxable upon decedent's death as an "essentially testamentary" transaction under section 2036(a). *Estate of Grace*, 395 U.S. at 320, 89 S.Ct. at 1733 (decedent retained a "significant interest in" the transferred property).

### IV.

For the foregoing reasons, the judgment of the district court is REVERSED.