27 F.3d 567
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harold ALSTON, Lewis J. Brown, and Harold Lee Mosley, Jr.,
Defendants-Appellants.
 Nos. 93-3206, 93-3207 and 93-3383.
 United States Court of Appeals, Sixth Circuit.
 June 17, 1994.
 
 Before: JONES and BOGGS, Circuit Judges; and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 The three defendants in this case--Harold Alston ("Alston"), Lewis J. Brown ("Brown"), and Harold Lee Mosley, Jr. ("Mosley")--appeal their convictions on various counts related to the distribution of cocaine base (aka "crack" cocaine), each claiming that he was convicted without sufficient evidence. Mosley also appeals his sentence enhancement for possession of a dangerous weapon, as well as the district court's failure to reduce his sentencing level for being a minor participant in the criminal enterprise. We AFFIRM all of the convictions and sentences as imposed by the district court.
 
 I.
 
 2
 The Steubenville, Ohio Police Department raided the home of Marianne Hicks ("Hicks") on the evening of March 27, 1992, having obtained a search warrant based upon confidential information and videotaped observation of her home earlier that evening. All three defendants were present at the house, as well as Hicks, Joel Diaz (aka Stephen Stevenson) ("Diaz"), both of whom testified at the trial, and other persons who played no role in this case. The officers discovered during the raid 23.63 grams of cocaine base (in the form of 123 "rocks" of crack cocaine), over three thousand dollars in cash, and two handguns, as well as a knife in the possession of Mosley. The indictment against the three defendants contained three counts: (1) conspiracy to distribute over five grams of cocaine base, in violation of 21 U.S.C. Sec. 846, (2) possession with intent to distribute on or about March 27, 1992, of over five grams of cocaine base, in violation of 21 U.S.C. Sec. 841 and 18 U.S.C. Sec. 2, and (3) possession of a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. Sec. 924(c).
 
 
 3
 The government witnesses at trial were Hicks, Diaz and the police officers who conducted the raid on March 27. Mosley was the only witness called on behalf of the defendants. Hicks testified that Alston was paying her $20 per day to use her rented home as a "crack house." Diaz described the conduct of the three defendants on their two trips to Steubenville, Ohio during March 1992, detailing how each had at various times handled the guns, the money and the drugs. The law enforcement officials who testified were Sergeant Anthony Andriano ("Andriano") of the Steubenville Police Department, who led the videotaped surveillance and later the raid upon the Hicks residence, Patrolman James J. Marquis ("Marquis") of the Steubenville Police Department and Agent Raymond L. Terry ("Terry") of the Jefferson County Prosecutor's Office, both of whom also participated in the raid. The officers saw Alston with a silver handgun in his possession, which he threw to the ground before being arrested. A second handgun was found at the feet of Brown and Diaz when they were subdued; the cocaine rocks were discovered in a Cheetos bag on the kitchen table; and the cash was on the person of Alston and in a pair of his pants that were found in the van that he had driven to Steubenville from New York City.
 
 
 4
 At the close of the government's case-in-chief, the district court overruled each defendant's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The court gave the jury an "aiding and abetting" instruction to the effect that "[a] person who aids or abets another in the commission of an offense is just as guilty of that offense as if he committed it himself." The jury convicted Alston on all three counts; Brown on counts two and three; and Mosley on count two only. The district court sentenced Alston to 120 months; Brown to 123 months (later reduced to 96 months because of Brown's diminished mental capacity); and Mosley to 103 months, after enhancing his sentencing level for possession of a dangerous weapon.
 
 
 5
 The defendants raise the following issues on appeal: (1) whether the government presented sufficient evidence at trial to convict each defendant, (2) whether the district court properly denied the defendants' Rule 29 motions, and (3) whether the district court erred in enhancing Mosley's sentence for possession of a dangerous weapon and in failing to reduce his sentence for being a minor participant in the criminal enterprise.
 
 II.
 A. Sufficiency of the Evidence
 
 6
 "In addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury." United States v. Hilliard, 11 F.3d 618, 620 (6th Cir.1993), cert. denied, 114 S.Ct. 1099 (1994). Our role is to determine whether all of the evidence --viewing it in the light most favorable to the government and drawing all reasonable inferences in the government's favor--could justify any rational trier of fact in concluding that each element of the crime has been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979). See also United States v. Sturman, 951 F.2d 1466, 1474 (6th Cir.1991), cert. denied, 112 S.Ct. 2964 (1992); United States v. Head, 927 F.2d 1361, 1365 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991). If we determine that it could do so, a claim based upon insufficiency of the evidence must fail. Moreover, the evidence presented by the government "need not remove every reasonable hypothesis except that of guilt." United States v. Stone, 748 F.2d 361, 362 (6th Cir.1984).
 
 B. The Substantive Charges
 
 7
 The elements of conspiracy, all of which must be proven beyond a reasonable doubt against a defendant in order to convict him, are that he "agree[d] to violate the drug laws and that [he] knew of, intended to join and participated in the conspiracy." United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990) (internal quotation marks omitted), cert. denied, 498 U.S. 1093 (1991). "[T]he existence of a conspiracy may be inferred from acts done with a common purpose.... Furthermore, ... a tacit or mutual understanding among the parties is sufficient to show conspiratorial agreement." United States v. Hughes, 891 F.2d 597, 601 (6th Cir.1989).
 
 
 8
 To convict a defendant on a charge of possession of illegal drugs with intent to distribute, the government must prove beyond a reasonable doubt both elements of the crime, i.e., possession as well as intent to distribute. The latter element can be inferred from the possession of a large quantity of drugs, too large for personal use alone. United States v. Faymore, 736 F.2d 328, 333 (6th Cir.), cert. denied, 469 U.S. 868 (1984). Furthermore, actual possession need not be proved, for the government can properly convict a defendant for aiding and abetting in the distribution of illegal drugs even if he never actually had them in his own possession. Such a conviction can rest on evidence showing that the defendant participated in a criminal enterprise and that he intended to help that enterprise succeed. United States v. Martin, 920 F.2d 345, 348 (6th Cir.1990), cert. denied, 111 S.Ct. 2038 (1991). The evidence may demonstrate, for example, that the defendant acted as a "lookout" for someone who had in his possession cocaine in an amount large enough to permit the inference that the cocaine was intended for distribution and not for personal use. Id.
 
 III.
 A. Alston
 
 9
 Alston, who was convicted on all three counts of the indictment, argues that his convictions "hinge entirely on the testimony of Hicks and Diaz, as there was no physical evidence connecting the drugs to [himself]." Alston attempts to discredit both Hicks and Diaz by showing the strong motivation each had for lying and by catching them in alleged lies and inconsistencies. He thus concludes that the government's case against him, deriving much of its force from witnesses who are not credible, is insufficient to justify his convictions.
 
 
 10
 Although the cocaine base was not discovered in Alston's possession, there was in fact significant physical evidence against him. The police officers who conducted the March 27 raid discovered a large quantity of cash on Alston's person and also saw a handgun in his possession during the raid. The government's case, therefore, does not depend entirely upon the testimony of Hicks and Diaz, whose credibility Alston attacks. Even if it did, however, Alston's contentions would fail. The appellant in United States v. Tipton, 11 F.3d 602 (6th Cir.1993), made a similar argument, to which we responded:
 
 
 11
 [The appellant] argues that [the witness's] testimony contained significant discrepancies that call into question her powers of recall and observation as well as her credibility.... However, the jury already considered these so-called "significant discrepancies" and still believed [the witness's] testimony. There is no doubt that it was rational for the jury to do so. In effect, [the appellant] is asking this court to re-weigh the evidence. This we cannot do. "[T]he appellate court must vigilantly refrain from conducting a de novo review of the evidence."
 
 
 12
 Id. at 609 (quoting Mahoney v. United States, 831 F.2d 641, 645 (6th Cir.1987)).
 
 
 13
 Hicks testified that Alston, whom she knew only as "Jeff," paid her $20 per day for use of her home to sell crack cocaine. Diaz testified that Alston, on the day when they first met in New York City, was "telling Mosley about coming down to Ohio, and that's how I first came down to Ohio.... We came down here probably to sell drugs." Diaz, along with the three defendants, traveled from New York City to Steubenville on two separate occasions in March 1992. Diaz testified that Alston had the drugs when he first saw them in Ohio and that "[w]ell, he [Alston] was the one that had the drugs."
 
 
 14
 The government's case-in-chief against Alston, when viewed in the light most favorable to the government, established that Alston helped plan multiple trips to Steubenville for the purpose of distributing illegal drugs. It also established that while there Alston possessed not only the drugs and large amounts of cash but also a firearm. This evidence was sufficient to convict Alston on all three counts of the indictment.
 
 B. Brown
 
 15
 Diaz testified that Brown acted as a lookout while crack cocaine was being sold from the Hicks residence; he also testified that Brown handled both the drugs and the money at different times. The total amount of crack cocaine seized during the raid was in excess of twenty-three grams, an amount large enough to justify the inference that it was not merely for personal use. See United States v. Clark, 928 F.2d 733, 736-37 (6th Cir.) (holding 26.71 grams of crack cocaine in possession of defendants sufficient to support a finding of intent to distribute), cert. denied, 112 S.Ct. 144, 240 (1991).
 
 
 16
 Brown argues not only that the evidence adduced at trial was insufficient to sustain his convictions on counts two and three of the indictment, for which his remedy in this court would be acquittal, but he also argues that the jury verdict was against the great weight of the evidence, for which his remedy here would be remand to the district court for a new trial. Before Brown can bring this latter argument, however, he must overcome a procedural hurdle. Since he failed to move the district court for a new trial on the ground that the jury verdict was against the great weight of the evidence, he must demonstrate that the district court's denial of his Rule 29 motion for a judgment of acquittal has preserved his right to appeal to this court for a new trial.
 
 
 17
 In Dixon v. Montgomery Ward, 783 F.2d 55 (6th Cir.1986), a civil case, we held that failure to bring before the district court either a motion for a judgment notwithstanding the verdict or a motion for a new trial precluded an appeal challenging the weight of the evidence. Id. at 55. We cited 6A Moore's Federal Practice, p 5915 (2d ed. 1985), for the proposition that a motion for a new trial is a necessary prerequisite to raising on appeal a challenge to the jury verdict as against the great weight of the evidence. Id. at 55. In an unpublished opinion in Seese v. Houten, No. 89-1675, 1990 WL 27164, at * 1 (6th Cir. March 14, 1990), we concluded that where the appellant had failed to move the district court for a new trial, the issue of whether the jury verdict was against the great weight of the evidence had not been preserved for appeal.
 
 
 18
 We have never addressed the precise situation that exists here, where an appellant has moved the district court for judgment of acquittal but has failed to move for a new trial based upon the claim that the jury verdict was against the great weight of the evidence. The general rule, however, is that unless exceptional circumstances prevail, we will not address an issue raised for the first time on appeal. Foster v. Barilow, 6 F.3d 405, 407 (6th Cir.1993). More specifically, other circuits have refused to entertain an appeal seeking a new trial when no motion for a new trial was made to the district court. See Snellman v. Ricoh Co., Ltd., 836 F.2d 528, 534 (Fed.Cir.1987) (refusing to hear Ricoh's appeal for a new trial when "Ricoh has never, at any time, presented to the district court the question of whether it was entitled to a new trial"); Scientific Holding Co., Ltd. v. Plessey, Inc., 510 F.2d 15, 28 (2d Cir.1974) ("A contention ... that the verdict was against the great weight of the evidence cannot be raised for the first time on appeal."). In Ricoh, the court noted that the Ninth Circuit reviews only for abuse of discretion a district court's denial of a motion for a new trial because the verdict was against the great weight of the evidence. 836 F.2d at 534. "But naturally in order to invoke even this narrow review, the motion for new trial would have to be made so that the trial court is given the opportunity to exercise its discretion.' " Id. (quoting 6A James W. Moore et. al., Moore's Federal Practice p 59.14 (2d ed. 1987)). We apply the same abuse of discretion standard here. See Gafford v. General Elec. Co., 997 F.2d 150, 171 (6th Cir.1993) ("Generally, the grant or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing [of] abuse of discretion.") (internal quotation marks omitted). Given these precepts, we decline to consider Brown's motion for a new trial. As demonstrated by the ensuing discussion, there is no basis in the evidence presented at trial leading to the conclusion that there are "exceptional circumstances" in this case that require us to abandon the well-established rule that we will not consider an issue raised for the first time on appeal.
 
 
 19
 We are left, then, only with Brown's appeal of the denial of his Rule 29 motion for judgment of acquittal based upon the insufficiency of the evidence. That appeal fails on the merits. Andriano identified Brown as the person he saw acting as a lookout during the surveillance of the Hicks residence, prior to the raid. Andriano, Marquis and Terry--the first three officers through the door at the beginning of the March 27 raid--each testified that he saw Brown holding a handgun. Brown himself presented no evidence at trial to rebut this testimony. If we view the evidence in the light most favorable to the government, we must conclude that a rational juror could find Brown guilty beyond a reasonable doubt on counts two and three of the indictment.
 
 C. Mosley
 
 20
 Mosley, who was convicted only on count two of the indictment, was the sole defendant to present any evidence on his own behalf, testifying that he had not traveled in the van with the other defendants on their second trip to Steubenville, which occurred on March 26, 1992. He testified that instead he traveled by bus from his temporary new home in Fayetteville, North Carolina, in order to visit some female friends in Steubenville. He further testified that he arrived at the Hicks residence at about 7:10 p.m. on the evening of the raid, after the surveillance had ended. He also testified that he only watched television while there and that he was not sitting in the kitchen when the raid began; rather, he was returning from a trip to the bathroom and merely passing through the kitchen on his way back to the living room. He claims that he had no knowledge of or involvement with any drugs, guns or money on the night of March 27, 1992.
 
 
 21
 Mosley's testimony is contradicted by the three officers who led the raid, all of whom testified that Mosley was sitting at the kitchen table when the raid began, the same table where the Cheetos bag containing 123 rocks of crack cocaine was later discovered. Diaz testified that Mosley had handled the guns, the drugs and the money during their two trips to Steubenville, that he had acted as a lookout during the sale of the crack cocaine, and that on the first trip he had become embroiled with Alston in a dispute over the "disappearance" of some of the cash proceeds from the sale of the cocaine. Based upon this testimony, there was sufficient evidence presented at trial to allow a rational juror to convict Mosley of count two of the indictment. Mosley presented no evidence to corroborate his version of events; the jury obviously chose not to believe that he had no involvement with the distribution of illegal drugs at the Hicks residence on the night of March 27, 1992. We cannot find that they were irrational in reaching that conclusion.
 
 IV.
 
 22
 We use the same test to rule on a district court's decision regarding a Rule 29 motion as we apply in considering a sufficiency-of-the-evidence claim. If any juror could rationally conclude from the evidence presented, viewed in the light most favorable to the government, that a defendant is guilty beyond a reasonable doubt, then a Rule 29 motion must be denied. See United States v. Connery, 867 F.2d 929, 930 (6th Cir.1989). We affirm the district court's denial of the defendants' Rule 29 motions.
 
 V.
 A. Review of Sentencing Decisions
 
 23
 Mosley has raised two sentencing issues on appeal. We review a sentencing court's factual findings only for clear error, although we review de novo that court's legal conclusions. United States v. Watkins, 994 F.2d 1192, 1195 (6th Cir.1993). The government must prove the basis for a sentence enhancement by a preponderance of the evidence. United States v. Medina, 992 F.2d 573, 592 (6th Cir.1993), cert. denied, 114 S.Ct. 1049 (1994). The defendant, on the other hand, faces the same burden of proof for a requested sentence reduction. United States v. Morrison, 983 F.2d 730, 732-33 (6th Cir.1993). A district court's determinations regarding a defendant's role in an offense are heavily fact-dependent, and a sentencing court is "not required to cite specific facts to support its findings" concerning a defendant's role, since it presided at the trial. United States v. Okayfor, 996 F.2d 116, 122 (6th Cir.), cert. denied, 114 S.Ct. 283 (1993).
 
 
 24
 B. The Enhancement for Possession of a Dangerous Weapon
 
 
 25
 The district court enhanced Mosley's sentence by two levels pursuant to U.S.S.G. Sec. 2D1.1(b)(1) (Nov. 1992), for possession, in connection with a drug-trafficking offense, of a "dangerous weapon," namely, the knife that was discovered on his person on the night of the raid. The court observed that Application Note 3 to U.S.S.G. Sec. 2D1.1(b)(1) requires that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." The court also observed that Application Note 1(d) to U.S.S.G. Sec. 1B1.1 defines "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury."
 
 
 26
 Mosley argues that it was clearly erroneous for the district court to enhance his sentence based upon his possession of a "pocket knife." He claims that his sole reason for carrying the knife was to help him to open packages, an ability needed during his employment with the United Parcel Service (although as of March 1992 he was no longer employed there). Because of Mosley's contention that his sentence should not have been enhanced, we have made the knife a part of the record on appeal. Mosley argues that the knife he possessed was not dangerous. After examining the weapon firsthand, however, we agree with the factual finding of the district court that the knife was indeed "dangerous" as defined in the Guidelines. Although the knife can easily be concealed in a pocket, it is no mere "pocket knife," as Mosley argues, but is rather a single-bladed device measuring a full eight inches long when extended, the blade alone being slightly over three and one-half inches in length. The knife also contains a locking mechanism to prevent the blade from collapsing while in use. Although it is not a switch-blade, there is no doubt that the knife could be used to inflict "death or serious bodily injury."
 
 
 27
 Mosley argues also that it was, in the words of the Guidelines, "clearly improbable" that the knife that he possessed when arrested was connected to the drug-trafficking offense. He cites United States v. Brown, 946 F.2d 1191 (6th Cir.1991), to support his argument. Brown, however, stands for the proposition that if a defendant is acquitted of a weapons charge, as Mosley was here, the district court, in order to enhance the defendant's sentence under U.S.S.G. Sec. 2D1.1(b)(1), must find by a preponderance of the evidence that he possessed a dangerous weapon during a drug-related offense. 946 F.2d at 1198 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991)). In other words, the Sec. 2D1.1(b)(1) enhancement cannot be based upon mere "conjecture." Id. at 1199. Brown also stands for the rather unremarkable proposition, inapposite here, that a defendant cannot have his sentence enhanced for the possession of a dangerous weapon in relation to a drug-trafficking offense when he is acquitted of the underlying drug offense. Id. at 1198.
 
 
 28
 We have previously stated that other federal circuits are "consistent in that they recognize that enhancement is appropriate if a weapon is found ... on the person of the defendant or an accomplice." Duncan, 918 F.2d at 651. Given this background, we cannot now hold that the district court erred in its conclusion that Mosley's sentence should be enhanced for the possession of a dangerous weapon in connection with a drug-trafficking offense. The district court found that Mosley possessed on his person a knife capable of inflicting serious bodily harm while engaged in activity for which he was convicted on a drug-trafficking charge. Its conclusion was not based upon mere conjecture, making the rule established in Brown and cited by Mosley inapplicable here. For these reasons, Mosley's appeal of his sentence enhancement must fail.
 
 C. Mitigating Role
 
 29
 Mosley also moved the sentencing court for a reduction in his sentence based upon a minor or minimal role in the criminal enterprise, pursuant to U.S.S.G. Sec. 3B1.2. The district court noted that the Guidelines provide that "the determination of a defendant's role in the offense is to be made on the basis of all relevant conduct and not solely on the basis of elements and acts cited in the count of conviction." See U.S.S.G., Ch. 3, Pt. B, intro. comment. (Nov. 1992). As mentioned above, we review a district court's determinations regarding a defendant's role in the offense under an extremely deferential standard; moreover, the burden of proving a mitigating role is on the defendant. Other than his own uncorroborated story, Mosley has presented no evidence to justify a reduced sentence. The district court did not err in denying that reduction.
 
 VI.
 
 30
 For all of the reasons stated above, we AFFIRM the convictions and sentences of all defendants.
 
 
 31
 NATHANIEL R. JONES, concurring in part and dissenting in part.
 
 
 32
 Although I agree with the bulk of the majority's opinion, I write separately to express my disagreement with Section V(B) of the decision. In this section, the majority concludes that Defendant Mosley's sentence was properly enhanced under U.S.S.G. Sec. 2D1.1(b)(1), for his possession of a knife. Because I believe it was clearly improbable that the knife was possessed in connection with the offense of conviction, I respectfully dissent in this limited regard.
 
 
 33
 Section 2D1.1(b)(1) allows a sentencing court to add two levels to a defendant's base offense level if "a dangerous weapon (including a firearm) was possessed." The burden is upon the government to establish this enhancement factor by a preponderance of the evidence. United States v. Feinman, 930 F.2d 495, 500 (6th Cir.1991). This circuit has found that the government's burden is satisfied "if a weapon is found in the residence where the drug transaction occurs, in the automobile that facilitated the drug transaction, or on the person of the defendant or an accomplice." United States v. Duncan, 918 F.2d 647, 651 (6th Cir.1990) (emphasis added), cert. denied, 111 S.Ct. 2055 (1991). However, the presumption created by the presence of a weapon is rebuttable, and may be overturned if the defendant can show that it is "clearly improbable that the weapon was connected with the offense." Sec. 2D1.1(b)(1), Application Note 3. See also United States v. Sanchez, 928 F.2d 1450, 1460 (6th Cir.1991).
 
 
 34
 The government has met its burden in the instant case, as the knife was found on Mosley at the time of his arrest. Therefore, the burden shifts to the defendant to prove that the knife he possessed on March 27th was not related to the crime of drug trafficking. I believe Mosley has satisfied this burden.
 
 
 35
 At trial, Mosley testified that he was employed by the United Parcel Service, and had been for the past two and a half years. J.A. at 289. With regard to his possession of the knife, Mosley testified that he carried it in connection with his job.
 
 
 36
 Q. How long have you had that knife?
 
 
 37
 A. Approximately three years.
 
 
 38
 Q. What was your purpose in having that knife?
 
 
 39
 A. At U.P.S., we have a lot of shipments come in, a lot of packages are wrapped and bundled together and secured with straps, big plastic straps. We use various items to unsecure [sic] the straps, to cut them. Some use knives, some use the snips, whatever is available.
 
 
 40
 Q. Strapping tape is difficult to cut?
 
 
 41
 A. Yes, there's different types of duct tape.
 
 
 42
 Q. Why have you continued to carry this knife?
 
 
 43
 A. I guess it was in my jacket pocket. I'm used to having it in my jacket pocket.
 
 
 44
 Q. Did you use it for legal purposes?
 
 
 45
 A. Yes, ma'am. Also, I use--I fish a lot, scaling fish, cutting line. And I was enroute [sic] to North Carolina, and I have a little pond behind my house. I knew I was going to do some fishing.
 
 
 46
 Q. You didn't use this for unlawful purposes then?
 
 
 47
 A. No, ma'am.
 
 
 48
 J.A. at 293-94.
 
 
 49
 Like the majority, I, too, have observed the knife. However, my conclusion based upon this examination differs from that of the majority. Although the knife, as the majority notes, is "no mere pocket knife," it is also not the deadly weapon that their description would seem to imply. Instead, it is a flat stainless steel knife with a relatively dull blade that could easily be forgotten once placed in a trouser or jacket pocket.
 
 
 50
 The weapons enhancement of U.S.S.G. Sec. 2D1.1(b)(1) should clearly be used when a defendant's possession of a weapon makes his involvement in the offense of conviction that much more reprehensible. However, where a defendant has shown that it is clearly improbable that a weapon's presence is relevant to the offense of conviction, the weapons enhancement provided in Sec. 2D1.1(b)(1) should not be applied. United States v. Garner, 940 F.2d 172, 176 (6th Cir.1991). Mosley has offered evidence in the instant case that indicates his possession of the knife was clearly not related to his offense of conviction. Moreover, none of the evidence before this court would appear to challenge his assertion. In light of this, I cannot help but conclude that the district court improperly enhanced Mosley's sentence by two points for possession of the knife. Accordingly, on this ground, I respectfully dissent.